COOLEY LLP
JEFFREY M. GUTKIN (216083)
(jgutkin@cooley.com)
AARTI REDDY (274889)
(areddy@cooley.com)
AMY M. SMITH (287813)
(amsmith@cooley.com)
MORGAN LEWIS (322205)
(melewis@cooley.com)
JULIA M. IRWIN (352861)
(JIrwin@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, California 94111-4004
Telephone: +1 415 693 2000
Facsimile: +1 415 693 2222

COOLEY LLP
JORGE L. SARMIENTO (*Pro Hac Vice*)
(jsarmiento@cooley.com)
55 Hudson Yards
New York, NY 10001-2157
Telephone: +1 212 479 6000
Facsimile: +1 212 479 6275

Attorneys for Defendant
LINKEDIN CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

V.R. individually and on behalf of all others similarly situated,

Plaintiff,

v.

LINKEDIN CORPORATION,

Defendant.

Case No. 5:24-CV-07399-EJD

**DEFENDANT LINKEDIN CORPORATION'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF V.R.'S FIRST AMENDED COMPLAINT**

Date: June 5, 2025
Time: 9:00 a.m.
Dept: Courtroom 4, 5th Fl.
Judge: Edward J. Davila
Trial Date: TBD
Date Action Filed: October 23, 2024

# TABLE OF CONTENTS


**Page**

MEMORANDUM AND POINTS OF AUTHORITIES ..... 1
I. INTRODUCTION ..... 1
II. BACKGROUND ..... 3
A. The Parties ..... 3
B. LinkedIn's Insight Tag ..... 3
C. CityMD's Use of LinkedIn's Insight Tag ..... 4
D. LinkedIn Discloses to Users that Advertising Partners may Collect, Use, and Share user Data with LinkedIn through Insight Tags ..... 4
III. ARGUMENT ..... 5
A. Plaintiff's Action Fails because LinkedIn Disclosed and Obtained her Consent to Collect and Share the Information Allegedly Intercepted by the Insight Tag. ..... 5
B. Plaintiff's CIPA Claims Must Be Dismissed For Multiple Reasons. ..... 7
1. CIPA Does Not Apply Under California Choice-of-Law Rules. ..... 7
2. Plaintiff Fails to State a Claim Under CIPA Section 631 For Other Reasons. ..... 9
a. LinkedIn is Not Liable Under Section 631 at all Because It Was Not a Third-Party Eavesdropper. ..... 10
b. Plaintiff's Clause-One Claim Fails for Additional Reasons. ..... 13
c. Plaintiff's Clause-Two Claim Has Additional Defects. ..... 13
d. Plaintiff's Clause-Three Claim Has Further Flaws. ..... 15
3. Plaintiff Fails to State a Claim Under CIPA Section 632. ..... 15
4. Plaintiff's CIPA Claims Fail Because She Has Not Alleged a "Communication." ..... 18
C. Plaintiff's Federal Wiretap Act Claim Fails As a Matter of Law. ..... 18
D. Plaintiff Fails to State a Claim for Invasion of Privacy Under the California Constitution. ..... 19
1. Plaintiff Fails to Allege Any Protected Privacy Interest. ..... 20
a. Plaintiff Fails to Allege a Valid Informational Privacy Interest. ..... 20
b. Plaintiff Fails to Allege an Autonomy Privacy Interest. ..... 21
2. Plaintiff Fails to Allege a Reasonable Expectation of Privacy in Her Online Commercial Activity. ..... 22
3. The Routine Commercial Behavior Alleged Is Not Highly Offensive as a Matter of Law. ..... 23
IV. CONCLUSION ..... 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.S. v. SelectQuote Ins. Servs.*,
2024 WL 3881850 (S.D. Cal. Aug. 19, 2024) .......... 16

*B.K. v. Eisenhower Med. Ctr.*,
721 F.Supp.3d 1056 (C.D. Cal. Feb. 29, 2024) .......... 23

*B.K. v. Eisenhower Medical Center*,
No. 5:23-cv-2092 (C.D. Cal. Oct. 12, 2023) .......... 24

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 13

*Cabral v. Supple, LLC*,
2012 WL 12895825 (C.D. Cal. Oct. 3, 2012) .......... 20

*Campbell v. Allied Van Lines Inc.*,
410 F.3d 618 (9th Cir. 2005) .......... 18

*Campbell v. Facebook Inc.*,
77 F.Supp.3d 836 (N.D. Cal. 2014) .......... 17

*In re Carrier IQ, Inc.*,
78 F.Supp.3d 1051 (N.D. Cal. 2015) .......... 17

*Cody v. Ring LLC*,
718 F. Supp. 3d 993 (N.D. Cal. 2024) .......... 12

*Comm. to Def. Reprod. Rights v. Myers*,
29 Cal.3d 252 (1981) .......... 21

*Cousin v. Sharp Healthcare*,
681 F.Supp.3d 1117 (S.D. Cal. 2023) .......... 23

*D'Angelo v. FCA US, LLC*,
726 F.Supp.3d 1179 (S.D. Cal. 2024) .......... 22, 23

*D'Angelo v. Penny OpCo*,
LLC, 2023 WL 7006793 (S.D. Cal. Oct. 24, 2023) .......... 22

*Dep't of Fair Emp. & Housing v. Super. Ct.*,
99 Cal.App.4th 896 (2002) .......... 20

*Doe I v. Google LLC*,
2024 WL 3490744 (N.D. Cal. July 22, 2024) .......... 13, 14, 19

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Doe v. Beard*,
63 F.Supp.3d 1159 (C.D. Cal. 2014) ... 25

*Doe v. Kaiser Found. Plan, Inc.*,
2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) ... 7, 8, 9, 15

*Doe v. Meta Platforms, Inc.*
690 F.Supp.3d 1064 (N.D. Cal. 2023), *motion to certify appeal denied*, 2024 WL 4375776 (N.D. Cal. Oct. 2, 2024) ... 17

*Doe v. Microsoft Corp.*,
2023 WL 8780879 (W.D. Wash. Dec. 19, 2023) ... 16

*Esparza v. Gen Digit. Inc.*,
2024 WL 655986 (C.D. Cal. Jan. 16, 2024) ... 15

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ... 10, 19

*Fogelstrom v. Lamps Plus, Inc.*,
195 Cal.App.4th 986 (2011) ... 25

*Garcia v. Enter. Holdings, Inc.*,
78 F. Supp. 3d 1125 (N.D. Cal. 2015) ... 6, 7

*Goodman v. HTC Am., Inc.*,
2012 WL 2412070 (W.D. Wash. June 26, 2012) ... 25

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ... 7, 15

*In re Google Location Hist. Litig.*,
428 F.Supp.3d 185 (N.D. Cal. 2019) ... 16, 17, 21

*In re Google Location Hist. Litig.*
514 F.Supp.3d 1147 (N.D. Cal. 2021) ... 17, 25

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ... 10, 20

*Hammerling v. Google LLC*,
2024 WL 937247 (9th Cir. Mar. 5, 2024) ... 6, 7

*Hammerling v. Google LLC*,
615 F.Supp.3d 1069 (N.D. Cal. 2022) ... 22, 23, 24

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**


*Heiting v. Athenahealth, Inc.*,
2024 WL 3761294 (C.D. Cal. July 29, 2024) ........ 12

*Heiting v. Taro Pharms. USA, Inc.*,
709 F.Supp.3d 1007 (C.D. Cal. 2023) ........ 14

*Hernandez v. Hillsides, Inc.*,
47 Cal.4th 272 (2009) ........ 24

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal.4th 1 (1994) ........ 19, 20, 22, 23

*Hill v. Workday, Inc.*
, 2024 WL 3012802 (N.D. Cal. June 14, 2024) ........ 20

*In re iPhone Application Litig.*,
844 F.Supp.2d 1040 (N.D. Cal. 2012) ........ 23

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023) ........ 8

*Javier v. Assurance IQ, LLC*,
649 F.Supp.3d 891 (N.D. Cal. 2023) ........ 11, 12

*Jones v. Peloton Interactive, Inc.*,
2024 WL 3315989 (S.D. Cal. July 5, 2024) ........ 12

*Jones v. Tonal Sys., Inc.*,
2024 WL 4357558 (S.D. Cal. Sept. 30, 2024) ........ 20

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F.Supp.3d 928 (N.D. Cal. 2023) ........ 19

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) ........ 19

*Love v. Ladder Fin., Inc.*,
2024 WL 2104497 (N.D. Cal. May 8, 2024) ........ 10, 11

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ........ 19, 23

*Mastel v. Miniclip SA*,
549 F.Supp.3d 1129 (E.D. Cal. 2021) ........ 14

*Mazza v. Am. Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012) ........ 8

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Moreno v. S.F. Bay Area Rapid Transit Dist.*,
2017 WL 6387764 (N.D. Cal. Dec. 14, 2017) ........ 16, 17

*Ojeda v. Kaiser Permanente Int'l, Inc.*,
2022 WL 18228249 (C.D. Cal. Nov. 29, 2022) ........ 23, 24

*People v. Badalamenti*,
27 N.Y.3d 423 (2016) ........ 8

*People v. Super. Ct. (Smith)*,
70 Cal.2d 123 (1969) ........ 16

*Pettus v. Cole*,
49 Cal.App.4th 402 (1996) ........ 21

*Ramos v. Gap Inc.*,
2024 WL 4351868 (N.D. Cal. Sept. 30, 2024) ........ 13

*Razuki v. Caliber Home Loans, Inc.*,
2018 WL 2761818 (S.D. Cal. June 7, 2018) ........ 24

*Revitch v. New Moosejaw, Inc.*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ........ 17

*Silver v. Stripe*,
2021 WL 3191752 (N.D. Cal. July 28, 2021) ........ 6, 7

*Smith v. Facebook*,
262 F. Supp. 3d 943 (N.D. Cal. 2017) ........ 7

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) ........ 6, 7

*Smith v. Fresno Irrigation Dist.*,
72 Cal.App.4th 147 (1999) ........ 21

*St. Aubin v. Carbon Health Tech., Inc.*,
2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) ........ 13, 20, 24

*Swarts v. Home Depot, Inc.*,
689 F.Supp.3d 732 (N.D. Cal. 2023) ........ 12, 14, 17

*Thomas v. Papa Johns Int'l, Inc.*,
2024 WL 2060140 (S.D. Cal. May 8, 2024) ........ 22

*Valenzuela v. Super Bright LEDs Inc.*,
2023 WL 8424472 (C.D. Cal. Nov. 27, 2023) ........ 12

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Vartanian v. VW Credit, Inc.*,
2012 WL 12326334 (C.D. Cal. Feb. 22, 2012) ........ 16

*Vita v. New England Baptist Hosp.*,
243 N.E.3d 1185 (Mass. 2024) ........ 18

*In re Vizio Inc., Consumer Priv. Litig.*,
238 F.Supp.3d 1204 (C.D. Cal. 2017) ........ 14

*Williams v. What If Holdings, LLC*,
2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) ........ 9, 10, 11, 23

*In re Yahoo Mail Litig.*,
308 F.R.D. 577 (N.D. Cal. 2015) ........ 8

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) ........ 21, 23

*Yockey v. Salesforce, Inc.*,
745 F.Supp.3d 945 (N.D. Cal. 2024) ........ 12, 17

*Yunker v. Pandora Media, Inc.*,
2013 WL 1282980 (N.D. Cal. Mar. 26, 2013) ........ 25

**Statutes**

18 U.S.C. § 2511(2)(d) ........ 5, 19

Cal. Penal Code
§ 630 ........ 8
§ 631 ........ *passim*
§ 632 ........ *passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ........ 1

**TO THE COURT, ALL PARTIES AND TO THEIR ATTORNEYS:**

Please take notice that on June 5, 2025 at 9:00 a.m. in Courtroom 4 of the above-captioned court, located at 280 South 1st Street, San Jose, California 95113, or as soon thereafter as the matter may be heard, defendant LinkedIn Corporation ("LinkedIn") will, and hereby does, move this Court for an order under Federal Rule of Civil Procedure 12(b)(6), dismissing the First Amended Complaint ("FAC") filed by plaintiff V.R. against LinkedIn in its entirety, with prejudice.

## ISSUES TO BE DECIDED

Whether the Court should dismiss Plaintiff's federal and state wiretap and constitutional claims in the FAC because she has failed to state a claim under Rule 12(b)(6).

## MEMORANDUM AND POINTS OF AUTHORITIES

### I. INTRODUCTION

This lawsuit is Plaintiff's counsel's ***fifth*** attempt to assert pixel claims against defendant LinkedIn, Inc ("LinkedIn"). Plaintiff V.R. claims that when she and class members visited certain webpages on CityMD's website to browse for information about a potential clinic visit, information about those interactions was transmitted to LinkedIn. LinkedIn offers its advertisers the option to install a web pixel or "Insight Tag" (in LinkedIn's parlance) to aid their advertising efforts. According to Plaintiff, because CityMD allegedly installed the Insight Tag on certain webpages, LinkedIn should be held liable under the Electronic Communications Privacy Act ("Federal Wiretap Act"), California's Invasion of Privacy Act ("CIPA") and for invasion of privacy under the California Constitution. Plaintiff's claims—which rest on the same allegations her counsel has copy-pasted from other actions—are meritless and should be dismissed.

**Disclosure and Consent.** As an initial and dispositive matter, all of Plaintiff's claims fail because she consented to the alleged interception. LinkedIn informs all its members through its Privacy Policy and related disclosures that information about their visits to and interactions with third-party websites may be collected and used for advertising purposes, just as Plaintiff contends occurred here. Plaintiff's agreement to these disclosures is fatal to all of Plaintiff's claims, as each requires her to prove that she did not consent to the conduct at issue.

Even setting aside the threshold issue of consent, her claims fail for a host of other reasons.

**CIPA.** Plaintiff's claims under Sections 631 and 632 of CIPA each suffer from fatal defects. *First*, as a New York resident visiting a healthcare website that operates clinics exclusively in New York and New Jersey, Plaintiff has not sufficiently pled that California law applies to her claims. *Second*, Plaintiff has not pled that LinkedIn intentionally received allegedly sensitive information, particularly in light of judicially-noticeable documents establishing that LinkedIn specifically instructed CityMD ***not*** to send it such information. *Third*, Plaintiff has not plausibly alleged that the underlying data purportedly transmitted to LinkedIn via the Insight Tag qualifies as a "communication" under the statute.

*Section 631.* In addition to these deficiencies, Plaintiff's Section 631 claim is barred by the party exception, because nothing in her pleading alleges that LinkedIn acted as anything more than a ***vendor*** receiving information for CityMD's benefit. Further, Plaintiff fails to make any factually supported allegation regarding key elements of her clause-two claim, including that LinkedIn intercepted communications "in transit," or that the communications were "received" in California.

*Section 632.* This claim also fails because the Insight Tag is not an "amplifying or recording device" under the statute. Plaintiff also has not plausibly alleged that her alleged communications were "confidential," and it is well settled that internet communications are presumptively ***not*** so.

**Federal Wiretap Act.** The deficiencies that are dispositive of Plaintiff's Section 631 claim apply with equal force as to her federal wiretapping claim. Additionally, this claim must be dismissed because the Act is a ***one-party consent statute***. Plaintiff's own allegations establish that the recipient of Plaintiff's communications—CityMD—consented to the alleged interception by installing the Insight Tag on its website. This too dooms Plaintiff's claim.

**Invasion of Privacy.** Plaintiff does not adequately plead a violation of California's constitutional right to privacy because the claim is not tied to California in any way, is premised on her defective wiretapping claims, and because Plaintiff has alleged no protected privacy interest in unspecific logistical information never used. Nor can Plaintiff allege a reasonable expectation of privacy in information that she voluntarily input on CityMD's website after being fully apprised that LinkedIn may receive such information. Finally, Plaintiff cannot clear the high bar for alleging a "highly offensive" intrusion sufficient to support a constitutional claim.

For all of these reasons, the Court should dismiss the FAC with prejudice.

## II. BACKGROUND

### A. The Parties

LinkedIn is a Delaware corporation headquartered in Sunnyvale, California. The company has created a social network with a professional focus, which provides a valuable "tool to help users find jobs or expand their professional network." (FAC ¶ 17.) Plaintiff V.R. alleges she resides in New York and claims to have "maintained an active LinkedIn account at all relevant times." *(Id.* ¶ 7.) Plaintiff further alleges that when she "created her LinkedIn account she agreed to LinkedIn's User Agreement," (*id.*), and that "[w]hen first signing up . . . users agree to . . . [LinkedIn's] Privacy Policy and [] Cookie Policy." (*Id.* ¶ 32.) Plaintiff does not allege that CityMD has any ties to California, nor could she: CityMD's website shows that all of its healthcare facilities are located in New York and New Jersey, and public records establish that VillageMD, the entity that owns and operates CityMD's website, resides in New Jersey. (*Id.* ¶ 1; Declaration of Aarti Reddy in Support of Motion to Dismiss ("Reddy Decl.") Exs. E, I.)

### B. LinkedIn's Insight Tag

LinkedIn enables advertisers to run advertising campaigns. (FAC ¶¶ 17-18.) Through its Marketing Solutions services, advertisers can target advertisements based on audience characteristics. (*Id.* ¶ 18.) LinkedIn's Insight Tag is a piece of JavaScript code that advertisers can install on their websites to enable features like campaign reporting to facilitate advertising and marketing campaigns. (*Id.* ¶¶ 24-25; *see also* Reddy Decl. Ex. A.) When a LinkedIn member visits a website where an advertiser installed a tag, the member's browser sends certain information about that visit to LinkedIn, (FAC ¶¶ 26-28). Some of that information is then allegedly sent to LinkedIn's Marketing Solutions advertising systems, where it is provided to advertisers to optimize their advertising campaigns, facilitate advertising retargeting, or learn more about their audiences. (*Id.* ¶¶ 18-20.) By helping advertisers analyze their website visitor information, LinkedIn enables those advertisers to target their advertisements to the most receptive LinkedIn members. (*Id.* ¶¶ 21-22.) Notably, while Plaintiff contends that LinkedIn "obtain[s]" "personal information and communications" (*id.* ¶ 20) to help advertisers "target . . . account holders for advertising" (*id.* ¶

30), nowhere does she plausibly allege that LinkedIn uses any such data for its own purposes.

### C. CityMD's Use of LinkedIn's Insight Tag

Plaintiff alleges that "CityMD is a provider of accessible healthcare services that permits patients to schedule appointments at their brick-and-mortar locations through its Website." (*Id.* ¶ 38.) According to Plaintiff, CityMD installed the Insight Tag on pages through which users booked appointments. (*See id.* ¶¶ 40-41.) Plaintiff further alleges that as a LinkedIn member books an appointment on the CityMD website, the Insight Tag sends various information to LinkedIn, including the person's gender, appointment location, time and reason for the booking, and a cookie identifier for the member. (*Id.* ¶¶ 41-44.) Notably, Plaintiff does not allege that the Insight Tag is installed on any CityMD patient portal that would collect sensitive, medical information.

Plaintiff contends that, while booking an appointment, her activity on CityMD's website was transmitted to LinkedIn via the Insight Tag and that at the time, she was not aware that CityMD had installed the Insight Tag on its website. (*Id.* ¶ 8.) Plaintiff does not identify any specific information she purportedly transmitted to CityMD, nor does she contend that she received targeted advertising from either CityMD or LinkedIn or that LinkedIn actually used her data in any way.

### D. LinkedIn Discloses to Users that Advertising Partners may Collect, Use, and Share user Data with LinkedIn through Insight Tags.

Plaintiff alleges that she is a LinkedIn member and agreed to LinkedIn's User Agreement, Privacy Policy, and Cookie Policy (containing its Cookie Table). (*Id.* ¶¶ 7, 32.) She cites each of these policies in her FAC and repeatedly quotes from LinkedIn's User Agreement and Privacy Policy to generally describe the policies, but she omits the detailed disclosures in each about LinkedIn's privacy and advertising practices that are fatal to her claims.

LinkedIn's **User Agreement** provides that use of the service is subject to those terms, as well as the Cookie Policy and Privacy Policy, "which cover[] how [LinkedIn] collect[s], use[s], share[s], and store[s] [users'] personal information." (Reddy Decl. Ex. F.) Plaintiff concedes that this includes the Insight Tag. (FAC ¶ 7.) The disclosures in LinkedIn's **Privacy Policy** describe and obtain consent to the exact practices challenged in this action. In a section titled "Cookies and Similar Technologies," LinkedIn informs members that it "use[s] cookies and similar technologies (e.g., pixels and ***ad tags***)

to collect data . . . on, off and across different services and devices where [users] have engaged with [their] Services.[1]" (Reddy Decl. Ex. D.) (emphasis added); (FAC ¶ 34.) It further discloses that LinkedIn "allow[s] some others to use cookies as described in [their] Cookie Policy." (Reddy Decl. Ex. D.); (FAC ¶ 34.) It also includes a section titled "Sites and Services of Others," which explains that LinkedIn "receive[s] information about [users'] ***visits and interaction with services provided by others*** when [users] log-in with LinkedIn or visit others' services that include . . . [LinkedIn's] ads, cookies or similar technologies." (Reddy Decl. Ex. D.) (emphasis added.) Moreover, in a section titled "Advertising," LinkedIn explains that it "target[s] (and measure[s] the performance of) ads to Members," using data including "[d]ata collected by advertising technologies on and off [LinkedIn's] Services using pixels, ***ad tags (e.g., when an advertiser installs a LinkedIn tag on their website)***, cookies, and other device identifiers." (Reddy Decl. Ex. D.) (emphasis added.)

Finally, LinkedIn's **Cookie Policy** expands on LinkedIn's data collection, reiterating that LinkedIn "use[s] cookies and similar technologies such as pixels . . . to collect and use data as part of [LinkedIn's] Services." (Reddy Decl. Ex. G.) The **Cookie Table**, discussed and linked in the Cookie Policy, "list[s] some of the cookies that [LinkedIn] and third parties place" and "include[s] information about cookies that LinkedIn uses on third party sites including when LinkedIn's Insight Tag is installed on [their] customers sites." (Reddy Decl. Ex. H.); (FAC ¶ 28.)

## III. ARGUMENT

### A. Plaintiff's Action Fails because LinkedIn Disclosed and Obtained her Consent to Collect and Share the Information Allegedly Intercepted by the Insight Tag.

Each of Plaintiff's claims requires her to establish that she did not consent to LinkedIn receiving her interactions with CityMD's website. *See* Cal. Pen. Code §§ 631-632 (CIPA) (imposing liability only for interception "without the consent of all parties"); 18 U.S.C. § 2511(2)(d) (ECPA) (interception of communication "shall not be unlawful . . . where one of the

[1] In the User Agreement, LinkedIn discloses: "This Contract applies to LinkedIn.com, . . . communications, and other services that state that they are offered under this Contract ('Services'), ***including the offsite collection of data*** for those Services, such as via our ads and the 'Apply with LinkedIn' and 'Share with LinkedIn' plugins." (Reddy Decl. Ex. F.) (emphasis added.)

parties to the communication has given prior consent to such interception"); *Hammerling v. Google LLC*, 2024 WL 937247, at *3 (9th Cir. Mar. 5, 2024) (invasion of privacy) (no reasonable expectation of privacy where Privacy Policy disclosed collection of data). The Ninth Circuit has consistently affirmed the dismissal of privacy claims where terms of service, privacy policies, or related disclosures describe the practices at issue. *See, e.g., Smith v. Facebook, Inc.*, 745 F. App'x 8, 8-9 (9th Cir. 2018) (affirming dismissal of California state law claims where the plaintiffs consented to the conduct at issue through "their acceptance of Facebook's Terms and Policies"); *Hammerling*, 2024 WL 937247, at *3. Courts consider disclosure and consent on motions to dismiss privacy claims and dismiss claims on this basis. *See, e.g., Hammerling*, 2024 WL 937247, at *3 (affirming dismissal due to defendant's disclosure of challenged conduct); *Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1136-37 (N.D. Cal. 2015) (dismissing CIPA claim for failure to adequately allege lack of consent and noting that plaintiff consented to challenged conduct covered by privacy policy); *cf. Silver v. Stripe*, 2021 WL 3191752, at *5 (N.D. Cal. July 28, 2021) (dismissing wiretap claims because "plaintiffs consented to the collection of the data at-issue").

Here, LinkedIn discloses that it "use[s] cookies and similar technologies (e.g., pixels and ad tags) to collect data . . . on, off and across different services and devices where [users] have engaged with [LinkedIn's] Services.[2]" (Reddy Decl. Ex. D.) LinkedIn also discloses that it receives "information about [users'] ***visits and interaction with services provided by others***" when members "visit others' services that include . . . [LinkedIn's] cookies or similar technologies." (*Id.*) (emphasis added.) Thus, LinkedIn expressly disclosed to and received agreement from all members, including Plaintiff, that its "cookies and similar technologies" include "pixels and ad tags," and that LinkedIn would receive information about [users'] ***visits to and interactions with websites*** using LinkedIn's "cookies and similar technologies." (*Id.*); (FAC ¶ 34.) Indeed, LinkedIn went so far as to explain that it targets ads using "[d]ata collected by advertising technologies on ***and off [LinkedIn's] Services using pixels, ad tags*** (e.g., when an advertiser installs a LinkedIn tag on their website),

[2] "Services" include "the ***offsite collection of data*** for those Services, such as via [LinkedIn's] ads." (Reddy Decl. Ex. F.) (emphasis added.)

cookies, and other device identifiers." (Reddy Decl. Ex. D.) (emphasis added.)[3]

Anticipating this defect, the FAC claims that LinkedIn violated the portion of the Privacy Policy saying LinkedIn "will only collect and process personal data about you where we have lawful bases," which Plaintiff claims it does not. (FAC ¶ 35-37.) This assertion, however, is facially circular, since LinkedIn's collection was only unlawful if it lacked consent and the same Privacy Policy clearly disclosed this collection and obtained the consent that made it "lawful."

Thus, ***all*** the alleged conduct that Plaintiff complains of is covered by the disclosures in LinkedIn's policies, so ***all*** of her claims should be dismissed with prejudice. *See, e.g., Smith*, 745 F. App'x at 8-9; *Silver*, 2021 WL 3191752, at *5; *Hammerling*, 2024 WL 937247, at *3; *Garcia*, 78 F. Supp. 3d at 1136-37; *see also In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 828 (N.D. Cal. 2020) (holding that plaintiffs had not adequately pled lack of consent for CIPA claims).[4]

### B. Plaintiff's CIPA Claims Must Be Dismissed For Multiple Reasons.

#### 1. CIPA Does Not Apply Under California Choice-of-Law Rules.

California's choice-of-law rules provide that "the class action proponent bears the initial

---

[3] While this further disclosure was not needed to obtain consent, LinkedIn also specifically identifies the Insight Tag as one such tag in its Cookie Table, incorporated by reference into its Cookie Policy, and discloses how the Insight Tag operates and what type of information it collects. (Reddy Decl. Ex. H.); (FAC. ¶ 28.)

[4] Plaintiff's newly-added allegations regarding HIPAA do not alter this analysis. Plaintiff never alleges that V.R. logged into an "authenticated" CityMD patient portal, and her visits to CityMD's unauthenticated webpages do not implicate HIPAA's heightened consent requirements. *Smith v. Facebook*, 262 F. Supp. 3d 943, 954-55 (N.D. Cal. 2017) (HIPAA authorization requirements inapplicable on publicly accessible webpages). Further, the information LinkedIn allegedly received came from Plaintiff's browser, not from CityMD's records. Finally, even if HIPAA were somehow implicated, Plaintiff has not established that this would alter the consent analyses for her particular causes of action. *Doe v. Kaiser Foundation Health Plan, Inc.*, 2024 WL 1589982, at *6 (N.D. Cal. Apr. 11, 2024).

burden to show that California has 'significant contact or significant aggregation of contacts' to the claims of each class member." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012). Applied here, Plaintiff has not made an initial showing that either she or the putative class—which encompasses "all LinkedIn account holders in the United States who booked a medical appointment" on CityMD's website—has the requisite ties to California. (FAC ¶ 48.) This is particularly so because CityMD has no alleged connection to California and judicially noticeable documents establish that all of CityMD's healthcare facilities are located in New York or New Jersey—***not*** California. (Reddy Decl. Exs. E, I.)

Even if Plaintiff had established these threshold contacts, and she has not, the Court would proceed to apply California's government interest test to determine whether California law displaces the interests of other states. That test considers (1) whether the laws of the relevant jurisdiction differ; (2) whether those differences are material; and (3) if yes, which state has a greater interest in application of its laws. *Mazza*, 666 F.3d at 589-90.

The first two prongs of this test are easily satisfied, as "[t]here are material differences between CIPA and the wiretapping statutes of the other 49 states." *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 602 (N.D. Cal. 2015) (finding nation-wide class could not bring CIPA claims); *Doe v. Kaiser Found. Health Plan, Inc.*, 2024 WL 1589982, at *12 (N.D. Cal. Apr. 11, 2024 (same); *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 964 (N.D. Cal. 2023) (same). This is true of New York law, which requires only single party consent. *Compare People v. Badalamenti*, 27 N.Y.3d 423, 432 (2016) (stating New York requires one party consent) *with* §§ 631-632 (requiring dual consent).

As to the third prong, "'each foreign state has an interest in applying its law to transactions within its borders,' which means that 'if California law were applied to [a nationwide class], foreign states would be impaired in their ability to calibrate liability to foster commerce.'" *Yahoo Mail Litig.*, 308 F.R.D. at 603 (quoting *Mazza*, 666 F.3d at 593) (finding "California's interest in applying its law to nonresidents who send or receive emails from Yahoo Mail subscribers in other states . . . attenuated"). The statute itself confirms this interpretation, as it is limited to protecting persons within the state. *Id.* ("[I]n enacting CIPA, the California legislature specifically stated that its intent was to 'protect the right of privacy of the *people of this state*.") (quoting Cal. Penal Code

§ 630) (collecting authorities). Most recently, in *Kaiser*, the court dismissed the CIPA claims of non-California plaintiffs even though the defendant (Kaiser) resided in California. The Court found that plaintiffs' respective home states had a more significant interest in application of their wiretap laws. *Kaiser*, 2024 WL 1589982, at *13 ("[T]he wiretapping law that applies turns on the residence of the Kaiser plan member."). So too here. As the *Kaiser* court aptly held, "[b]ecause wiretapping statutes are designed to protect the privacy interests of individual members, the residences of the individuals are more important to the respective sovereign than the residence of the alleged wrongdoer." *Id.* As Plaintiff here is a New York resident, New York law applies to her claims.[5]

**2. Plaintiff Fails to State a Claim Under CIPA Section 631 For Other Reasons.**

Even setting aside the threshold issue of whether CIPA should apply to this action at all (it does not), Plaintiff's claims under Section 631 still cannot withstand dismissal. Plaintiff asserts claims under the statute's first three clauses, and each fail for multiple reasons. (FAC ¶¶ 60-72.)

***First***, all of Plaintiff's Section 631 claims are barred by the party exception. As a vendor that provided a tool to assist CityMD with its marketing and advertising efforts, LinkedIn was a party to Plaintiff's alleged communications with CityMD, not a third-party "eavesdropper." ***Second***, Plaintiff's CIPA clause-one violation fails because such a claim only "concerns telephonic wiretapping specifically" and "does not apply to the context of the internet." *Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *2 (N.D. Cal. Dec. 22, 2022). ***Third***, Plaintiff also fails to plausibly allege many of the requisite elements of her claim under CIPA's second clause, including that any alleged interception was (1) "willful," (2) occurred while the communication was "in

---

[5] Any argument that Plaintiff is entitled to invoke the California choice-of-law clause in LinkedIn's User Agreement to circumvent CIPA's territoriality requirement would fail. The Court in *Kaiser* rejected this exact argument, explaining that the Ninth Circuit has "recognized that parties' agreement to apply California law must yield to those circumstances where the law in question contains 'geographical limitations'" and that "CIPA does contain express geographical limitations." 2024 WL 1589982, at *11-12.

transit," and was (3) "within this state." § 631(a). ***Finally***, Plaintiff's claim under CIPA's third clause fails because it is entirely derivative of her deficient clause-one and clause-two claims. *Id.*

**a. LinkedIn is Not Liable Under Section 631 at all Because It Was Not a Third-Party Eavesdropper.**

It is well established that CIPA applies "only to eavesdropping by a third-party and not to recording by a participant to a conversation." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020) (citation omitted). Plaintiff's bare pleading fails to allege that LinkedIn acted as anything more than an extension of and a service provider to CityMD, which was a party to the alleged communications. In *Graham v. Noom, Inc.*, the Court analyzed a similar theory and held that a third-party vendor did not violate CIPA where it merely "provide[d] a software service that capture[d] its clients' data . . . and allow[ed] the clients to analyze their data" but had not "intercepted and used the data itself." 533 F.Supp.3d 823, 832 (N.D. Cal. 2021). Rather, the vendor operated as "an extension of Noom," the website operator, offering "a tool . . . that allows ***Noom*** to record and analyze ***its own data*****[.]**" *Id.* (emphases added). Numerous courts have so held. *See, e.g.*, *Love v. Ladder Fin., Inc.*, 2024 WL 2104497, at *1 (N.D. Cal. May 8, 2024) (finding *Graham* analysis dispositive of CIPA claims); *Williams*, 2022 WL 17869275, at *3.

The same analysis necessitates dismissal here. Plaintiff has not pled that LinkedIn acted as anything more than an extension of CityMD. Indeed, both her pleading and documents incorporated by reference into the FAC establish that the Insight Tag is ***installed by website owners.*** (*See* FAC ¶ 24 n.17 (citing LinkedIn's "Insight Tag" webpage (attached as Reddy Decl. Ex. A) which describes how advertisers can "manually install the tag . . . yourself[.]")) (emphasis added); *see also* FAC ¶ 25 (explaining that the "Insight Tag is a JavaScript-based code which allows for the installation of its software").) She plainly alleges LinkedIn represents to its customer advertisers that the tag is "[a] simple code snippet added to [a] website [that] can ***help you*** optimize ***your campaigns***, retarget ***your website visitors***, and learn more about ***your audiences***." (FAC ¶ 24 (emphasis added).) Her allegations—which are near-verbatim copied from her counsel's other complaints—then focus on how these tools "***allow[] marketers*** . . . to target potential customers"; "***allow advertisers*** to select specific characteristics to help them reach their ideal audience"; and

"***allow potential advertisers*** to '[b]uild strategic campaigns.'" (*Id.* ¶¶ 18, 21 (emphasis added).) Nowhere does Plaintiff allege that LinkedIn shared any CityMD data (let alone her data) with other advertisers, and she provides no factual allegations to support her conclusory assertion that LinkedIn used such data for any independent purpose. (*Id.* ¶ 9.) At most, Plaintiff contends that the Insight Tag generally sends certain cookies that allow LinkedIn to identify the user associated with certain Insight Tag transmissions, and then offers a conclusory assertion (again, copied from other pleadings) that LinkedIn can use this information to target ads to account holders. (FAC ¶ 30.) This bald allegation is not supported by any well-pled facts, and in fact, it is contradicted by the other allegations demonstrating that LinkedIn merely provides data to advertising customers regarding ***their own*** website visitors to facilitate ***their own*** ad campaigns. (*See, e.g.*, FAC ¶¶ 18-22, 24.) Accordingly, Plaintiff has failed to allege that LinkedIn's Insight Tag was anything more than a mere "tool that [defendant] used to record its own communications with plaintiff." *Williams*, 2022 WL 17869275, at *3; *see also Love*, 2024 WL 2104497, at *1.

Plaintiff may invoke another line of cases holding that an analytics provider is not an extension of a defendant if it has "the capability to use" communications for any other purpose than supporting the website operator. *Javier v. Assurance IQ, LLC*, 649 F.Supp.3d 891, 900 (N.D. Cal. 2023). Plaintiff's claims fail under this rubric as well. As explained above, rather than alleging capability of use, Plaintiff's allegations focus on how the Insight Tag "allows marketers and advertisers" to conduct targeted advertising. (FAC ¶ 21.) At most, Plaintiff generally asserts that "LinkedIn incorporated the information it intercepted from the CityMD Website" into unspecified "marketing tools to fuel its targeted advertising service." (*Id.* ¶ 45; *see also id.* ¶ 20 ("personal information and communications obtained by LinkedIn are used to fuel various services offered via LinkedIn's Marketing Solutions").) She further alleges that the Insight Tag may transmit certain cookies that enable LinkedIn to identify members, and that based on this data, LinkedIn is "able to" target its own members with ads. (*Id.* ¶¶ 25-29.) Nowhere does she elaborate on these bare allegations, let alone allege that she ever saw or received targeted ads herself, that any other specific LinkedIn member did, or that LinkedIn targeted ads based on her or anyone else's Insight Tag data for any advertising customer other than CityMD.

As courts applying *Javier* have held, a plaintiff must plead ***specific facts*** to plead that a vendor independently used the underlying communication. For example, in *Heiting v. Athenahealth, Inc.*, 2024 WL 3761294, at *4 (C.D. Cal. July 29, 2024), allegations that Salesforce "may record, store, and use" the underlying data and "uses chat data to enhance its own business" were "too general and conclusory to support a reasonable inference that Salesforce had the capability to use the communications for any purpose beyond providing it to Defendant." *Id.* (dismissing case). These are akin to Plaintiff's allegations here that LinkedIn uses the challenged data to "fuel various services." (FAC ¶ 20.) Multiple courts have likewise dismissed CIPA claims based on similarly vague allegations. *See, e.g.*, *Valenzuela v. Super Bright LEDs Inc.*, 2023 WL 8424472, at *8 (C.D. Cal. Nov. 27, 2023) (finding plaintiff's allegation that chat vendor had "capability to use its record of [w]ebsite users' interaction[s]" for data analytics and marketing/advertising to consumers "conclusory and insufficient"); *Swarts v. Home Depot, Inc.*, 689 F.Supp.3d 732, 737-38, 745 (N.D. Cal. 2023) (allegations that defendant "analyz[ed] the data and provid[ed] [] customer data metrics related to each conversation" and "accesse[d] and analyze[d]" those "conversations" were not sufficient to show capability of use). By contrast, those courts that have denied dismissal based on *Javier* have done so based on allegations that are far more robust than those pled by Plaintiff. *See, e.g.*, *Yockey v. Salesforce, Inc.*, 745 F.Supp.3d 945, 951 (N.D. Cal. 2024) (finding capability of personal use where plaintiff alleged Salesforce fed chat communications into its "data intelligence platform" to "train the AI models that form the basis of some of [Salesforce's] services"); *Jones v. Peloton Interactive, Inc.*, 2024 WL 3315989, at *4 (S.D. Cal. July 5, 2024) (capability of personal use adequately alleged where plaintiff alleged that "Drift analyzes and uses the chat conversations it intercepts [to improve its machine learning technologies] all of which *independently benefits and serves*" Drift).

Finally, even if Plaintiff had pled capability of use under *Javier*, her claims would still fail. None of her allegations regarding the Insight Tag are ***tethered to CityMD***, let alone Plaintiff's interactions with CityMD's website. In *Cody v. Ring LLC*, the Court found allegations of use "conclusory" where they were based on public reporting that the analytics provider "exploited" chat data for "targeted advertising" but said "nothing about ***Ring*** [defendant website] or about Meta

or Kustomer using ***Ring*** data to create targeted advertising." 718 F.Supp.3d 993, 1003 n.3 (N.D. Cal. 2024) (emphasis added); *see also Doe I v. Google LLC*, 741 F.Supp.3d 828, 839 (N.D. Cal. 2024) (dismissing CIPA claims where the complaint "relie[d] heavily on Google's own product descriptions" and lacked allegations as to the use of Google Analytics by the healthcare websites at issue). Here, Plaintiff relies on generic descriptions regarding "the various services offered via LinkedIn Marketing Solutions," and does not adequately allege facts connecting the Insight Tag to the challenged website. (FAC ¶ 20.) Such allegations are not sufficient to state a claim.

**b. Plaintiff's Clause-One Claim Fails for Additional Reasons.**

Plaintiff cannot assert a clause-one claim because this provision "prohibits telephonic wiretapping, which does not apply to the internet." *St. Aubin v. Carbon Health Tech., Inc.*, 2024 WL 4369675, at *4 (N.D. Cal. Oct. 1, 2024) (citation omitted); *Ramos v. Gap Inc.*, 2024 WL 4351868, at *3 (N.D. Cal. Sept. 30, 2024) (collecting cases). Plaintiff alleges only internet transmissions, and her clause-one claim fails. (FAC ¶ 64.)

**c. Plaintiff's Clause-Two Claim Has Additional Defects.**

Plaintiff's clause-two claim also fails because she has not pled that LinkedIn: (1) "willfully" intercepted communications while they were (2) "in transit," (3) within the state. § 631(a).

***Willful.*** To state a clause-two claim, Plaintiff must plausibly allege LinkedIn "willfully" obtained and read, or attempted to read, her communications with CityMD. Plaintiff's allegations are largely a recitation of elements copied from her counsel's other pleadings, so they are not entitled to a presumption of truth. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). She pleads that "LinkedIn, willfully and without the consent of Plaintiff and Class Members, read or attempted to read, or learn the contents or meaning of Plaintiff's and Class Members'" and "used or attempted to use the communications and information they received through their tracking technology, including to supply advertising services." (FAC ¶¶ 68-69.) Without citing any factual basis, Plaintiff asserts that "LinkedIn intends to intercept this protected and sensitive health data due to the value" and that "LinkedIn is well aware of the dangers of incorporating such technology on websites that offer medical and health services, but continues to do so." (*Id.* ¶ 9.) But Plaintiff pleads no facts to render these allegations plausible, as she must. Courts dismiss similar claims

based on far more detailed allegations of intent. *Cf. Heiting v. Taro Pharms. USA, Inc.*, 709 F.Supp.3d 1007, 1019 (C.D. Cal. 2023) (holding allegations that "Defendant paid Genesys to intercept messages . . . [did not] demonstrat[e] Defendant acted with the requisite knowledge or intent to aid and abet Genesys's purported CIPA violation"). Even if such allegations were sufficient, Plaintiff cannot plausibly allege intent on the face of LinkedIn's policies disclosing the ***opposite*** intention—that LinkedIn does not want to receive sensitive information and expressly prohibits websites from transmitting such data to LinkedIn through its Advertising Agreement and Ads Policies. (Reddy Decl. Ex. B, LinkedIn Ads Agreement ("You will also not transfer to LinkedIn any data that . . . constitutes Sensitive Data, including by way of installing the Insight Tag on a page that collects medical, financial, or other Sensitive Data about identified or identifiable individuals."); *id.* Ex. C, LinkedIn Advertising Policies) ("Ads must not target based on sensitive data or categories . . . including medical information and consumer health data.").) Stated simply: "There is nothing inherently unlawful about [LinkedIn] offering its source code" to CityMD—"at least [given LinkedIn's] admonitions" to CityMD that it "must avoid transmitting" health, medical, or other sensitive data. *Doe I*, 741 F.Supp.3d at 841.

*Doe*'s reasoning is apt. There, Judge Chhabria found "plaintiffs have not adequately alleged that Google intentionally obtained patients' private health information" via Google Analytics, *inter alia*, because "Google repeatedly told developers not to send personally identifiable information" and thus "purposefully acted so as ***not*** to receive any personal health information." *Id.* at 840. Plaintiff's claim here fails under the same reasoning.

***In Transit.*** "[T]he crucial question under § 631(a)'s second clause is whether [plaintiff] has plausibly alleged that [defendant] read one of his communications while it was still in transit, i.e., before it reached its intended recipient." *Mastel v. Miniclip SA*, 549 F.Supp.3d 1129, 1137 (E.D. Cal. 2021); § 631(a). This means that to state a claim under CIPA's second clause, the plaintiff must allege specific facts including "***when*** the interception occurs." *Swarts*, 689 F.Supp.3d at 746 (emphasis added). "While Plaintiff[] need not prove [his] theory of interception on a motion to dismiss, Plaintiff[] must provide fair notice to Defendant[] of when [he] believe[s] [Defendant] intercepts [his] communications." *In re Vizio Inc., Consumer Priv. Litig.*, 238 F.Supp.3d 1204,

1228 (C.D. Cal. 2017); *see also Esparza v. Gen Digit. Inc.*, 2024 WL 655986, at *4 (C.D. Cal. Jan. 16, 2024) (emphasis added) (dismissing CIPA claims involving pixel technology where "Plaintiff fail[ed] to allege specific facts about . . . when the interception took place, and how the interception took place"). Plaintiff's claim fails this requirement, as she merely parrots the terms of the statute (FAC ¶ 68), and pleads no facts to describe when the alleged interception takes place.

***Sent or received within California.*** As explained, Section 631 "contain[s] express geographical limitations." *Kaiser*, 2024 WL 1589982, at *12; *supra* Sec. III.B.1. The statute states the defendant must intercept the plaintiff's "communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received ***at any place within this state***." *Id.* (quoting § 631). Thus, to plead a CIPA claim, Plaintiff must allege she was sending or receiving a message from within California. Plaintiff—who resides in New York—was communicating with CityMD, which operates clinics only in New York and New Jersey. (Reddy Decl. Exs. E, I.) Nothing she pleads suggest that any communication was received in California, and her claim fails.

**d. Plaintiff's Clause-Three Claim Has Further Flaws.**

To plead a valid clause three claim, a Plaintiff must allege "a violation of the first or second clauses." *In re Google Assistant Privacy Litig.*, 457 F.Supp.3d 797, 827 (N.D. Cal. 2020). As "Plaintiff[] ha[s] not done so, [she] ha[s] failed to plead a violation of the third clause[.]" *Id.*

**3. Plaintiff Fails to State a Claim Under CIPA Section 632.**

To state a Section 632 claim, Plaintiff must show, *inter alia*, that LinkedIn intentionally recorded a confidential communication by means of an "amplifying or recording device." *See* § 632. Plaintiff has not satisfied her pleading burden because she fails to adequately allege that LinkedIn "intentionally" recorded a "confidential" communication, and that the Insight Tag—a piece of JavaScript software code—qualifies as an "amplifying or recording device." *Id.*

***Intentionally Record.*** Like her Section 631 claim, Plaintiff's Section 632 claim fails because the FAC fails to allege that LinkedIn acted with "intent." (*See generally* FAC ¶¶ 74-81.) Her only allegations regarding LinkedIn's state of mind merely parrot Section 631's elements. (*Id.* ¶¶ 67-68.) This is insufficient under the statute, which requires that she allege "specific factual circumstances that make plausible [LinkedIn's] intent to record a confidential communication."

*Vartanian v. VW Credit, Inc.*, 2012 WL 12326334, at *2 (C.D. Cal. Feb. 22, 2012) (finding allegation that Defendant "had a policy or practice of recording telephone conversations" too conclusory to plead intent). Indeed, California courts have long held that Section 632(a)'s intent requirement is satisfied only if "the person using the recording equipment [did] so with the ***purpose*** *or* ***desire*** of recording a confidential conversation, or with the ***knowledge to a substantial certainty*** that his use of the equipment will result in the recordation of a confidential conversation." *People v. Super. Ct. (Smith)*, 70 Cal.2d 123, 134 (1969) (emphasis added). It is not enough to intend to use a recording device; instead, a defendant must ***intend to use it for an impermissible purpose***. This rule "provides effective protection against 'eavesdroppers' without penalizing the innocent use of recording equipment." *Id.* Plaintiff's perfunctory pleading, coupled with LinkedIn's policies specifically prohibiting advertising customers from sending sensitive information via the Insight Tag, belies any plausible inference of intent.

***Device.*** Plaintiff's Section 632 claim also fails because she does not plead that the Insight Tag is an "amplifying or recording ***device***." § 632(a) (emphasis added). Numerous courts interpreting CIPA recognize that software is not a "device," and have dismissed CIPA claims challenging software. *A.S. v. SelectQuote Ins. Servs.*, 2024 WL 3881850, at *11 (S.D. Cal. Aug. 19, 2024) (dismissing Section 632 claim based on recording by software); *Doe v. Microsoft Corp.*, 2023 WL 8780879, at *8 (W.D. Wash. Dec. 19, 2023) ("Because software does not constitute a 'device' under the CIPA, Plaintiff's § 632 claim against Microsoft is deficient."); *Moreno v. S.F. Bay Area Rapid Transit Dist.*, 2017 WL 6387764, at *5 (N.D. Cal. Dec. 14, 2017) (holding "device" does not apply to software under CIPA § 637.7). This approach is consistent both with rules of statutory construction and CIPA's legislative history.

In interpreting California law, courts look to the "actual words of the statute" and "giv[e] them a plain and commonsense meaning." *In re Google Location Hist. Litig.*, 428 F.Supp.3d 185, 193 (N.D. Cal. 2019) (citation omitted). In *Moreno*, the Court interpreted a different provision of CIPA and observed that a device is generally understood as a "thing," "a piece of mechanical or electronic equipment," or "a piece of equipment or a mechanism designed to serve a special purpose or perform a special function." 2017 WL 6387764, at *5. It then concluded that because the term

"device" refers to a physical object, it did not apply to software. *Id.*; *see also In re Google Location Hist. Litig.*, 428 F.Supp.3d at 193 (holding same). Legislative history is also consistent with this interpretation; the legislature chose to limit Section 632 to electronic "devices," and although the statute was modified in 2017 by AB 1671, those revisions did nothing to address software.

LinkedIn acknowledges that a handful of courts in this district have allowed plaintiffs to allege that software is a "device" for purposes of section 632. In *Doe v. Meta Platforms* and *Yockey*, the Court found that software was a device pursuant to § 632 based on cases interpreting the term in the federal Wiretap Act. *Doe v. Meta Platforms, Inc.* 690 F.Supp.3d 1064, 1080 (N.D. Cal. 2023), *motion to certify appeal denied*, 2024 WL 4375776 (N.D. Cal. Oct. 2, 2024); *Yockey*, 745 F.Supp.3d at 955. But neither of those courts considered legislative history or the plain language of the statute, and the federal Wiretap Act cases on which those courts relied invoked the definition of "device" in the Wiretap Act, which has no application here. *In re Carrier IQ, Inc.*, 78 F.Supp.3d 1051, 1084 (N.D. Cal. 2015) (construing language in the definition of "device" under Wiretap Act). Instead, this Court should adopt the same reasoning it applied in *In re Google Location History Litigation*, in which it dismissed a claim under a different provision of CIPA, observing that "Software like Google Maps, Chrome, etc. are not 'devices' within the meaning of CIPA because they are not 'equipment.'" *In re Google Location Hist. Litig.*, 428 F.Supp.3d at 193 (citation omitted). The same is true here—Insight Tag is no closer to being a device than Google Maps is.

***Confidential***. Lastly, Plaintiff does not plausibly allege that her online communications with CityMD were "confidential" within the meaning of the statute. "A communication is confidential under Section 632 if a party 'has an objectively reasonable expectation that the conversation is not being overheard or recorded.'" *Swarts*, 689 F.Supp.3d at 746 (citation omitted). Because online "communications can easily be shared by, for instance, the recipient(s) of the communications," "California appeals courts have generally found that Internet-based communications are not 'confidential' within the meaning of [S]ection 632[.]" *Id.* at 746-47 (quoting *Campbell v. Facebook Inc.*, 77 F.Supp.3d 836, 849 (N.D. Cal. 2014)) (collecting cases). Indeed, there is a "presumption' that such communications do not give rise to the requisite expectation." *Id.* at 747 (quoting *Revitch v. New Moosejaw, Inc.*, 2019 WL 5485330, at *3 (N.D.

Cal. Oct. 23, 2019)). That presumption applies here, and Plaintiff's claim fails for this reason, too.

#### 4. Plaintiff's CIPA Claims Fail Because She Has Not Alleged a "Communication."

Finally, Sections 631 and 632 of CIPA both require that Plaintiff plausibly allege that LinkedIn unlawfully intercepted "communications." §§ 631(a), 632. Here, Plaintiff alleges that LinkedIn receives "information including the patient's appointment time, who the appointment was for," general reasons from a pre-determined list as to "why they were booking the appointment" and their "gender." (FAC ¶ 41.) Such information is not a "communication." The Massachusetts Supreme Court recently confronted this exact issue in a similar challenge to the use of MetaPixel and Google Analytics on hospital websites. *Vita v. New England Baptist Hosp.*, 243 N.E.3d 1185 (Mass. 2024). There, hospital websites used pixel technology that purportedly transmitted, *inter alia*, the URL of the webpages visited, the titles of webpages visited, and "the filtering criteria selected . . . including specialty, location, gender, and language." *Id.* at 1190-91. In construing Massachusetts' law's statutory text, the court observed that the statute did not specifically define "communication." *Id.* at 1188. It further noted that "it does seem clear that the plain meaning of 'communication' includes messages and conversations between people" and held that Plaintiffs' complaints "do not allege communications between people in this commonsense way." *Id.* at 1196-97. After surveying legislative history and case law, the Court determined "the rule of lenity must apply, thereby entitling the defendants to 'the benefit of any rational doubt' in the construction of the statute.'" *Id.* at 1195-96 (citation omitted). It then dismissed the wiretap claims.

*Vita*'s reasoning is relevant here. Like the Massachusetts Wiretap law, CIPA does not define "communication." Further, Plaintiff does not plausibly allege that the browsing information identified in her pleading is akin to a communication in accordance with that term's plain meaning. *Campbell v. Allied Van Lines Inc.*, 410 F.3d 618, 620–21 (9th Cir. 2005) ("Under the 'plain meaning' rule, [w]here the language [of a statute] is plain and admits of no more than one meaning the duty of interpretation does not arise[.]") (citation omitted). Accordingly, the Court should dismiss each of her CIPA claims for this independent reason.

### C. Plaintiff's Federal Wiretap Act Claim Fails As a Matter of Law.

Plaintiff's claim under the Federal Wiretap Act easily fails. The Act is a one-party consent statute: no claim can withstand dismissal where "one of the parties to the communication has given prior consent to such interception[]." 18 U.S.C. § 2511(2)(d). Plaintiff's own allegations and judicially noticeable documents establish that the alleged recipient of the Plaintiff's communications (CityMD) voluntarily installed the Insight Tag on its website. (FAC ¶ 25, n. 19 (citing Reddy Decl. Ex. A.)). As "[LinkedIn's] customers must have chosen to deploy [LinkedIn's] tools on their websites, it necessarily follows that 'one of the parties to the communication'—the websites themselves—gave 'prior consent to such interception.'" *Katz-Lacabe v. Oracle Am., Inc.*, 668 F.Supp.3d 928, 945 (N.D. Cal. 2023) (collecting authorities); *see also Doe I*, 741 F.Supp.3d at 842 (dismissing Federal Wiretap Act claims based on one-party consent; "[t]he alleged interception of private health information only occurs because the health care providers choose to install Google source code on their web properties. This must mean the providers consented to the operation of Google source code."). Accordingly, this claim fails.

Finally, Plaintiff also fails to adequately plead the other elements of her claim, including that LinkedIn acted willfully, the alleged interception took place while "in transit," and that LinkedIn acted as a party to the underlying communication. *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) (Federal Wiretap Act requires interception to occur during "transmission"); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 607 ("Courts perform the same analysis for both the Wiretap Act and CIPA regarding the party exemption."). For these reasons as well, Plaintiff's Federal Wiretap Act claim should be dismissed.

### D. Plaintiff Fails to State a Claim for Invasion of Privacy Under the California Constitution.

The California Constitution "set[s] a high bar for an invasion of privacy claim." *Low v. LinkedIn Corp.*, 900 F.Supp.2d 1010, 1025 (N.D. Cal. 2012). To state a claim, a plaintiff must allege (1) a legally protected privacy interest, (2) a reasonable expectation of privacy under the circumstances, and (3) highly offensive conduct by the defendant that amounts to a serious invasion of the protected privacy interest. *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal.4th 1, 35–37 (1994). As an initial matter, as explained above regarding Plaintiff's CIPA claims, Plaintiff's constitutional

invasion of privacy claim also fails due to the lack of any jurisdictional nexus to California. *Hill v. Workday, Inc.*, 2024 WL 3012802, at *45-47 (N.D. Cal. June 14, 2024) (dismissing California constitutional claims for lack of any alleged connection California). Further, where, as here, the invasion of privacy claim shares a factual basis with a defective wiretapping claim, it too should be dismissed. *Graham*, 533 F.Supp.3d at 836. But even if the Court ignores these points and considers the merits of this claim, Plaintiff's allegations cannot clear the "high bar" for surviving dismissal.

**1. Plaintiff Fails to Allege Any Protected Privacy Interest.**

Cognizable privacy interests are generally categorized into "two classes: (1) interests in precluding the dissemination or misuse of sensitive and confidential information ('informational privacy'); and (2) interests in making intimate personal decisions or conducting personal activities without . . . intrusion . . . ('autonomy privacy')." *Hill*, 7 Cal.4th at 35. Plaintiff alleges neither.

**a. Plaintiff Fails to Allege a Valid Informational Privacy Interest.**

Because the "primary objective" of informational privacy is "to regulate [] unnecessary collection ***and improper use*** of [personal] information for dissemination," *Dep't of Fair Emp. & Housing v. Super. Ct.*, 99 Cal.App.4th 896, 904 (2002) (emphasis added), courts "focus ***both*** on the nature of the stored information and the way it is used." *Jones v. Tonal Sys., Inc.*, 2024 WL 4357558, at *13 (S.D. Cal. Sept. 30, 2024) (emphasis added). No informational privacy interest is implicated here because Plaintiff fails to properly allege any dissemination or misuse. *See, e.g.*, *id.*

Plaintiff also fails to allege that sensitive and confidential information is at issue. *Hill*, 7 Cal.4th at 35. Most personal information is not constitutionally protected. *See Cabral v. Supple, LLC*, 2012 WL 12895825, at *3 (C.D. Cal. Oct. 3, 2012). Protected information must be "private," such that "well-established social norms recognize" that dissemination or misuse may cause "unjustified embarrassment or indignity." *Hill*, 7 Cal.4th at 35. Plaintiff attempts to shoehorn the information at issue into the category of "sensitive, confidential communications and protected health information." (FAC ¶ 85.) "Medical patients' privacy interests . . . include descriptions of symptoms, family history, diagnoses, test results, and other intimate details concerning treatment," but Plaintiff alleges none of these, nor equivalently private information. *St. Aubin*, 2024 WL 4369675, at *12 (citation omitted). Again, the challenged information is neither sensitive nor

private, and is instead ***at most*** merely (1) gender plus logistical information limited to (2) unremarkable urgent care appointment information (location and time) and (3) the appropriate billing-related category ("Regular urgent care," "Employer Referred (Occupational Medicine)," "Work Related Injury," "Motor Vehicle Accident," or "[Department of Transportation] Physical.") (FAC ¶¶ 39, 41.) ***None*** of this even approaches sufficient sensitivity. *See, e.g.*, *Pettus v. Cole*, 49 Cal.App.4th 402, 441 (1996) (patient's private anxieties about his rash medication together with his sleep patterns, sex drive, hostile feelings toward coworkers, suicidal ideation, smoking and drinking habits, comprehensive social history, and highly emotional behaviors were "the type of 'sensitive personal information' the California voters had in mind").

Setting aside the fatally generic nature of the challenged information, Plaintiff further fails to adequately allege that LinkedIn receives information revealing a member as having booked a medical appointment in the first place. Images in Plaintiff's FAC demonstrate that the Insight Tag sends discrete packages of information connecting clicks with the corresponding button text, divorced from the context in which the button appeared. (FAC ¶¶ 39-41 (showing separate transmissions with no adjacent page text, such as the question to which a click responds).) Because Plaintiff fails to allege that LinkedIn connects isolated information sent via separate transmissions to infer a narrative identifying a person as having booked a medical appointment, she has also inadequately alleged the foundational premise of the informational privacy interest she claims.

**b. Plaintiff Fails to Allege an Autonomy Privacy Interest.**

California courts have recognized an autonomy privacy interest only where invasions into physical, bodily choices are implicated. *Comm. to Def. Reprod. Rights v. Myers*, 29 Cal.3d 252, 275 (1981) (addressing constraints on women's decisions about bearing children); *Smith v. Fresno Irrigation Dist.*, 72 Cal.App.4th 147, 161-62 (1999) (discussing autonomy privacy in the context of drug testing through use of a urine sample). Plaintiff pleads no facts suggesting bodily autonomy is at issue, and courts have not found "cause to extend the bodily autonomy line of cases to data autonomy." *In re Google Location History Litig.*, 428 F.Supp.3d at 198 (collecting cases); *see In re Yahoo Mail Litig.*, 7 F.Supp.3d 1016, 1039 (N.D. Cal. 2014) (noting California courts' limitation of autonomy privacy to "cases alleging *bodily* autonomy")).

**2. Plaintiff Fails to Allege a Reasonable Expectation of Privacy in Her Online Commercial Activity.**

Plaintiff's constitutional claim fails for the additional reason that her expectation of privacy was not reasonable. A "reasonable expectation of privacy is an objective entitlement founded on broadly based and widely accepted community norms." *Hill*, 7 Cal.4th at 37. In cases challenging the data collection practices of corporate actors, courts consider "the amount of data collected, the sensitivity of data collected, the manner of data collection, and the defendant's representations to its customers." *Hammerling v. Google LLC*, 615 F.Supp.3d 1069, 1088 (N.D. Cal. 2022). Here, the data allegedly collected was minimal, confined to particular interactions on certain pages of a single website, and Plaintiff inadequately alleges that such data were sensitive. *Supra* Sec. II.C.1.b; *see, e.g.*, *D'Angelo v. FCA US, LLC*, 726 F.Supp.3d 1179, 1205 (S.D. Cal. 2024) ("[C]ourts are more reluctant to find a reasonable expectation of privacy when the data collected is not sensitive.").

Nothing in Plaintiff's pleading demonstrates that any expectation of privacy was ***reasonable*** under the circumstances. Plaintiff concedes that she voluntarily visited CityMD's website and transmitted limited logistical information to CityMD, and nowhere plausibly alleges that such transmissions should remain private from ***CityMD or its agents***. Virtually all consumer-facing websites track the conduct of web visitors. *See, e.g.*, *Thomas v. Papa Johns Int'l, Inc.*, 2024 WL 2060140, at *3 (S.D. Cal. May 8, 2024) (noting as "a factor to consider" that the proliferation of litigation in this area "suggest[s] Defendant is not alone in this practice.") Generally, "consumers do not have a reasonable expectation of privacy over their activity" on publicly accessible websites, because we "understand that what we do on the Internet is not completely private." *Id.* at *2; *see D'Angelo v. Penny OpCo*, LLC, 2023 WL 7006793, at *10-11 (S.D. Cal. Oct. 24, 2023) (no reasonable expectation of privacy on public website). Given that the challenged practices are nearly universal, no user can reasonably expect that her browsing activity is completely private.[6]

Finally, Courts are similarly skeptical where "Plaintiffs do not allege that Defendant set out

[6] While Plaintiff alleges that she did not consent to purported interception, (FAC. ¶ 46), "allegations that a plaintiff did not consent to data collection practices, without more, does not support a reasonable expectation of privacy." *D'Angelo*, 726 F. Supp. 3d at 1206.

an expectation that it would not collect" the challenged data. *D'Angelo*, 726 F. Supp. 3d at 1205. As argued, *see supra* Sec. III.A, the data collection practices Plaintiff alleges are clearly disclosed under LinkedIn's policies. To any extent Plaintiff expected that LinkedIn's privacy practices would differ from representations it made in policies ***she accepted***, this was patently unreasonable. *Hill*, 7 Cal. 4th at 26; *In re Yahoo Mail Litig*., 7 F. Supp. 3d at 1037–38.

**3. The Routine Commercial Behavior Alleged Is Not Highly Offensive as a Matter of Law.**

"Actionable invasions of privacy must be sufficiently serious in their nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right." Hill, 7 Cal. 4th at 37. A "highly offensive" intrusion must constitute an "egregious breach of the social norms underlying the privacy right." *In re iPhone Application Litig.*, 844 F.Supp.2d 1040, 1063 (N.D. Cal. 2012) (quoting *Hill*, 7 Cal.4th at 26, 37). This high standard requires more than mere "disclosure of personal information," *Low*, 900 F.Supp.2d at 1025, and indeed, more than mere "private medical information." *Ojeda v. Kaiser Permanente Int'l, Inc.*, 2022 WL 18228249, at *6 (C.D. Cal. Nov. 29, 2022) (revealing Covid vaccine status, though politically fraught, not highly offensive). Instead, courts do a holistic review of "factors such as the likelihood of serious harm to the victim, the degree and setting of the intrusion, [and] the intruder's motives and objectives[.]" *See, e.g.*, *Cousin v. Sharp Healthcare*, 681 F.Supp.3d 1117, 1126 (S.D. Cal. 2023); *Hammerling*, 2022 WL 17365255, at *8. Each favors dismissal with prejudice.

***First***, Plaintiff fails to plead any risk of "serious harm," much less with the requisite specificity as to, for example, "the form and extent of the distress and alienation suffered," such as being "singled out" for coworkers' approbation. *Ojeda*, 2022 WL 18228249, at *7. Because Plaintiff merely offers vague claims of unspecified "economic injury" and "breach of Plaintiff's privacy" (FAC ¶¶ 8, 55), on the facts alleged—limited disclosure of information to a single party—this Court should conclude that she ***cannot*** satisfy the pleading standard.

***Second***, Plaintiff's allegations that LinkedIn received information revealing her selections in CityMD location, appointment time, and billing category (FAC ¶¶ 8, 39, 41) insufficiently allege "***what***, if any, medical information or medical records were transmitted or disclosed." *B.K. v.*

*Eisenhower Med. Ctr.*, 721 F.Supp.3d 1056, 1064 (C.D. Cal. Feb. 29, 2024) (emphasis added). Courts have dismissed claims far more detailed than what Plaintiff here alleges. For example, in *B.K. v. Eisenhower Medical Center*, the plaintiff alleged that "[w]hile using Eisenhower Health's digital services, Plaintiff communicated and received information regarding her appointments, treatments, medications, and clinical information, including her surgeries, lab work, and scans" and the Meta Pixel caused this to be "intercepted, viewed analyzed [sic], and used by unauthorized third parties." Class Action FAC ¶¶ 174-176, *B.K. v. Eisenhower Medical Center*, No. 5:23-cv-2092 (C.D. Cal. Oct. 12, 2023), ECF No. 1. The court held that these allegations were ***insufficiently specific*** to survive dismissal. By contrast, the plaintiff in *St. Aubin* survived dismissal because she alleged that "the transmitted URLs contain information regarding the ***specific symptoms, physical condition, or course of treatment*** of an individual." 2024 WL 4369675, at *12 (emphasis added). In denying dismissal, the *St. Aubin* court distinguished the defendant's cited cases on the basis that "they [did] not involve information that revealed ***the nature of a patient's treatment***." *Id.* at *10 (emphasis added). Because Plaintiff likewise fails to allege that LinkedIn received any information revealing a specific medication condition, history, or treatment, she has not alleged disclosure of any "medical information" to which courts have applied constitutional privacy protections.

***Third***, Plaintiff cannot rely on her generic allegations that "LinkedIn utilized Plaintiff's . . . information for its own purposes, including for targeted advertising" (FAC ¶ 81), to evidence some incriminating motive. Noting that "[t]he provision of new, improved, and more personalized services is . . . largely indistinguishable from, [defendant] Google's 'commercial purposes,'" the *Hammerling* Court was "unpersuaded that Plaintiffs' alleged motive for Google's data collection—that 'Google was using the data for its own purposes' . . . —alter[ed] this conclusion." 2022 WL 17365255, at *9 n.13. Further, Plaintiff does not suggest that LinkedIn's alleged receipt of her information was "intentional, punitive, [or] reckless" rather than "inadvertent." *Ojeda*, 2022 WL 17227249, at *7. "[N]o cause of action will lie for accidental, misguided, or excusable acts of overstepping upon legitimate privacy rights." *Hernandez v. Hillsides, Inc.*, 47 Cal.4th 272, 295 (2009). Even where "privacy damage . . . is serious," a plaintiff must allege "***intentional***, egregious privacy invasion[.]" *Razuki v. Caliber Home Loans, Inc.*, 2018

WL 2761818, at *2 (S.D. Cal. June 7, 2018). By contrast, courts have held that allegations of "accidental" conduct "of the kind that is inevitable when human beings process large amounts of information" are "not necessarily sufficient to sustain a claim under article I, § 1" of the California Constitution. *Doe v. Beard*, 63 F.Supp.3d 1159, 1169 (C.D. Cal. 2014).

Instead of suggesting any culpable motive, this limited collection of logistical information alleged is "routine commercial behavior," which courts consistently find is not highly offensive. *Fogelstrom v. Lamps Plus, Inc.*, 195 Cal.App.4th 986, 992 (2011). LinkedIn's Insight Tag is a ubiquitous commercial technology, and use thereof is mere routine commercial behavior. *Fogelstrom* is instructive: There, as here, the challenged practice included alleged nonconsensual obtainment of the plaintiff's personal information, which was used to serve advertisements to him. *Id*. The court in that case found that "the conduct of which plaintiff complains does not constitute a 'serious' invasion of privacy." *Id.* Similarly, in *Yunker v. Pandora Media, Inc.*, the court found allegations that defendant "Pandora obtained [the plaintiff's PII] and provided that information to advertising libraries for marketing purposes" to be "similar to the allegations in . . . *Fogelstrom*[.]" 2013 WL 1282980, at *15 (N.D. Cal. Mar. 26, 2013) (finding plaintiff's allegations insufficient to show highly offensive conduct). This Court should reach the same conclusion.

Courts find allegations of a highly offensive intrusion sufficient only where there are far more extreme, pervasive intrusions than limited collection of generic consumer selections on certain pages of a single website. *See, e.g.*, *Goodman v. HTC Am., Inc.*, 2012 WL 2412070, at *15 (W.D. Wash. June 26, 2012) (finding allegations "that Defendants engaged in the continuous tracking of their location and movements" plausibly highly offensive because "GPS monitoring generates a precise, comprehensive record . . . that reflects a wealth of detail about . . . familial, political, professional, religious, and sexual associations"); *In re Google Location Hist. Litig.* 514 F.Supp.3d 1147, 1158 (N.D. Cal. 2021) (same where plaintiffs did not "allege that Google only collected information at discrete, intuitive times, but rather, they specifically allege that Google collected location information constantly"). Such facts are worlds away from this case.

## IV. CONCLUSION

For the foregoing reasons, the Court should dismiss the FAC with prejudice.

Dated: March 12, 2024

COOLEY LLP

By: */s/ Jeffrey M. Gutkin*
Jeffrey M. Gutkin
Attorney for Defendant
LINKEDIN CORPORATION

315643590