**BURSOR & FISHER, P.A.**
Sarah N. Westcot (State Bar No. 264916)
701 Brickell Avenue, Suite 2100
Miami, FL 33133
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
E-Mail: swestcot@bursor.com

*Attorney for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

V.R., individually and on behalf of all other persons similarly situated,

Plaintiff,

v.

LINKEDIN CORPORATION,

Defendant.

Case No. 5:24-cv-07399-EJD

**PLAINTIFF'S OPPOSITION TO DEFENDANT LINKEDIN CORPORATION'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Date: June 5, 2025
Time: 9:00 a.m.
Dept: Courtroom 4, 5th Fl.
Judge: Hon. Edward J. Davila
Trial Date: TBD
Date Action Filed: October 23, 2024

## TABLE OF CONTENTS

**PAGE(S)**

STATEMENT OF ISSUES TO BE DECIDED PER CIVIL L. R. 7-4(**A**)(3) .................................... 1

I. INTRODUCTION .................................................................................................... 1

II. STATEMENT OF FACTS ......................................................................................... 2

III. ARGUMENT .......................................................................................................... 4

A. Plaintiff Did Not Consent To LinkedIn's Collection of Her Private Health Information ........................................................................................ 4

B. Plaintiff States a Claim Under CIPA §§ 631 and 632 ........................................... 6

1. Choice of Law Considerations Are Premature. ............................................ 6

2. LinkedIn Was Not a Party to the Communications Between Plaintiff and CityMD, It Was an Eavesdropper. ........................................... 7

3. Plaintiff Plausibly Alleges a Claim Under the Second Clause of CIPA § 631(a). ..................................................................................... 11

4. Plaintiff Plausibly Alleges a Claim Under the Third Clause of CIPA § 631(a). ........................................................................................ 13

5. Plaintiff States a Claim Under CIPA § 632 ................................................ 14

6. Plaintiff Alleges That LinkedIn Intercepted A Communication ........................................................................................ 18

C. Plaintiff States A Claim Under the Wiretap Act ................................................. 18

D. Plaintiff States a Claim for Invasion of Privacy Under the California Constitution ............................................................................................... 19

IV. CONCLUSION ...................................................................................................... 24

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*B.K. v. Desert Care Network,*
2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) .......... 19

*Bias v. Wells Fargo & Co.*,
942 F. Supp. 2d 915 (N.D. Cal. 2013) .......... 7

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) .......... 11, 19

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) .......... 17

*Busby v. Invoca, Inc.*,
2025 WL 822664 (N.D. Cal. Mar. 14, 2025) .......... 7

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) .......... 5

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) .......... 6

*Cousin v. Sharp Healthcare*,
702 F. Supp. 3d 967 (S.D. Cal. 2023) .......... 20

*Doe I v. Google LLC,*
2024 WL 3490744 (N.D. Cal. July 22, 2024) .......... 11, 12

*Doe v. FullStory, Inc.*,
712 F. Supp. 3d 1244 (N.D. Cal. 2024) .......... 4

*Doe v. Kaiser Found. Health Plan, Inc.,*
2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) .......... 6

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) .......... passim

*Esparza v. Kohl's, Inc.*,
723 F. Supp. 3d 934 (S.D. Cal. 2024) .......... 8

*Fan v. NBA Properties Inc.*,
2024 WL 1297643 (N.D. Cal. Mar. 26, 2024) .......... 4

*Flanagan v. Flanagan*,
41 P. 3d 575 (Cal. 2002) .......... 17

*Gladstone v. Amazon Web Servs., Inc.*,
739 F. Supp. 3d 846 (W.D. Wash. 2024) .......... 10, 12

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) .......... 10

*Heerde v. Learfield Commc'ns, LLC*,
2024 WL 3573874 (C.D. Cal. July 19, 2024) .......... 6, 10

*Heiting v. Taro Pharms. USA, Inc.*,
728 F. Supp. 3d 1112 (C.D. Cal. 2024) .......... 13

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) .......... 19

*Hilfiker Square, LLC v. Thrifty Payless, Inc.*,
2016 WL 7031283 (D. Or. Nov. 29, 2016) .......... 4

*In re Apple Inc. Device Performance Litig.*,
386 F. Supp. 3d 1155 (N.D. Cal. 2019) .......... 7

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 19, 21, 22, 23

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) .......... 16

*In re Google Inc.*,
2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) .......... 5

*In re Google Location Hist. Litig.,*
428 F. Supp. 3d 185 (N.D. Cal. 2019) .......... 17

*In re Google Location Hist. Litig.*,
514 F. Supp. 3d 1147 (N.D. Cal. 2021) .......... 22

*In re Google RTB Consumer Priv. Litig.*,
606 F. Supp. 3d 935 (N.D. Cal. 2022) .......... 4

*In re Grp. Health Plan Litig.*,
2023 WL 8850243 (D. Minn. Dec. 21, 2023) .......... 19

*In re Meta Pixel Healthcare Litig.,*
647 F. Supp. 3d 778 (N.D. Cal. 2022) .......... 19, 20, 22, 23

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016) .......... 24

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) .......... 24

*Jackson v. LinkedIn Corp.*,
2024 WL 3823806 (N.D. Cal. Aug. 13, 2024) ........ passim

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) ........ 6, 10

*Javier v. Assurance IQ, LLC*,
2022 WL 1744107 (9th Cir. May 31, 2022) ........ 18

*Kane v. Univ. of Rochester*,
2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024) ........ 19

*Kauffman v. Papa John's Int'l, Inc.*,
2024 WL 171363 (S.D. Cal. Jan. 12, 2024) ........ 7

*Kurowski v. Rush Sys. For Health*,
2023 WL 8544084 (N.D. Ill. Dec. 11, 2023) ........ 18

*Libman v. Apple, Inc.*,
2024 WL 4314791 (N.D. Cal. Sept. 26, 2024) ........ 17

*Lieberman v. KCOP Television, Inc.*,
110 Cal.App.4th 156, 1 Cal.Rptr.3d 536 (2003) ........ 17

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021) ........ 22

*McCoy v. Alphabet, Inc.*,
2021 WL 405816 (N.D. Cal. Feb. 2, 2021) ........ 5

*Mekhail v. N. Mem'l Health Care*,
726 F. Supp. 3d 916 (D. Minn. 2024) ........ 19

*Norman-Bloodsaw v. Lawrence Berkeley Lab'y*,
135 F.3d 1260 (9th Cir. 1998) ........ 19

*Oddo v. United Techs. Corp.*,
2022 WL 577663 (C.D. Cal. Jan. 3, 2022) ........ 23

*Opperman v. Path*,
87 F. Supp. 3d 1018 (N.D. Cal. 2014) ........ 23

*People v. Superior Ct. of Los Angeles Cnty.*,
70 Cal. 2d 123 (1969) ........ 16

*Robbins v. Mscripts, LLC*,
2023 WL 5723220 (N.D. Cal. Sept. 5, 2023) ........ 21

*Rojas v. HSBC Card Servs. Inc.*,
20 Cal. App. 5th 427 (2018) ........ 15, 16

*Smith v. Google, LLC*,
2024 WL 2808270 (N.D. Cal. June 3, 2024) ..... passim

*Sussman v. Am. Broad. Companies, Inc.*,
186 F.3d 1200 (9th Cir. 1999) ..... 18

*Turner v. Nuance Commc'ns, Inc.*,
735 F. Supp. 3d 1169 (N.D. Cal. 2024) ..... 4

*Valentine v. NebuAd, Inc.*,
804 F. Supp. 2d 1022 (N.D. Cal. 2011) ..... 6, 7, 13

*Valenzuela v. Nationwide Mut. Ins. Co.*,
686 F. Supp. 3d 969 (C.D. Cal. 2023) ..... 12, 13

*Vita v. New England Baptist Hosp.*,
494 Mass. 824 (2024) ..... 18

*Yockey v. Salesforce, Inc.*,
2024 WL 3875785 (N.D. Cal. Aug. 16, 2024) ..... 17

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ..... 8

Statutes

18 U.S.C. § 2510 ..... 2, 11

18 U.S.C. § 2511(2)(d) ..... 18

42 U.S.C. § 1320d ..... 14, 20, 21, 23

Cal. Penal Code § 631 ..... 18

Cal. Penal Code § 632 ..... passim

**REGULATIONS**

45 C.F.R. § 160 ..... 14, 20

45 C.F.R. § 164 ..... 14, 20, 23

**STATEMENT OF ISSUES TO BE DECIDED PER CIVIL L. R. 7-4(a)(3)**

1. Whether Plaintiff V.R. ("Plaintiff") states a claim under the California Invasion of Privacy Act ("CIPA") § 631(a) and § 632 where Defendant LinkedIn Corporation ("Defendant" or "LinkedIn") eavesdropped on Plaintiff's and class members' communications involving information related to her medical appointment with third party CityMD, via CityMD's website, www.citymd.com (the "Website"), using the LinkedIn Insight Tag, without consent.

2. Whether Plaintiff states a claim for invasion of privacy under the California Constitution where Plaintiff had a reasonable expectation of privacy that the protected health information she shared with the Website would remain confidential between her and CityMD, and where Defendant intercepted Plaintiff's sensitive information.

## I. INTRODUCTION

LinkedIn earns billions of dollars a year in advertising revenue by harvesting consumer data across the internet. While online advertising is ordinarily permissible, LinkedIn has elected to disregard federal and state privacy laws in order to increase its own profits. This case concerns LinkedIn's intentional interception and exploitation of the private information related to Plaintiff's and class members' medical appointments. Rather than correct its unlawful business practices, LinkedIn instead relies on misrepresentations of law and fact in an attempt to discredit Plaintiff's claims.

Plaintiff hereby opposes Defendant's Motion to Dismiss Plaintiff's Complaint (ECF No. 28) ("MTD"). Plaintiff states a claim under CIPA § 631(a) and § 632 and for invasion of privacy under California's Constitution because Defendant, intentionally, and without the consent of Plaintiff and class members, intercepted sensitive and confidential communications between Plaintiff (and class members) and third party CityMD, via CityMD's Website. Specifically, Defendant intercepted Plaintiff's and class members' confidential information related to their medical appointments because CityMD contracted and worked with Defendant to embed Defendant's software, the LinkedIn Insight Tag, on CityMD's Website, which captured Plaintiff's and class members' interactions with the Website. These communications included information related to Plaintiff's and class members' medical appointments, including the reason for the appointment (e.g. motor vehicle

accident). Defendant then uses this information by incorporating it into its advertising machinery which functions to place Plaintiff and class members into targeted audiences for advertisers of similar products and/or services by serving them targeted advertising on the LinkedIn platform. Defendant makes the LinkedIn Insight Tag free for website owners to use for exactly that reason, namely, so that it can surreptitiously receive information from website interactions, connect those interactions to a specific LinkedIn user, and then generate highly specific audience segments which Defendant then uses to sell advertising.

As a result of Defendant's unlawful conduct, Plaintiff brings the present action on behalf of himself and a class of "all LinkedIn account holders in the United States who booked a medical appointment on www.citymd.com." *See* First Amended Complaint ("FAC") ¶ 66 (ECF No. 25). Plaintiff brings claims against Defendant for (1) violation of the ECPA, 18 U.S.C. § 2510, (2) violation of CIPA § 631(a), (3) violation of CIPA § 632, and (4) invasion of privacy under the California Constitution. *Id.* ¶¶ 78-131.

The claims raised in Plaintiff's FAC are not ones of first impression. Notably, the Honorable P. Casey Pitts recently considered a similar case involving a CIPA § 631 claim related to Defendant's use of the LinkedIn Insight Tag on a different website. Judge Pitts denied Defendant's motion to dismiss while rejecting many of the same arguments Defendant makes here. *See, e.g.*, *Jackson v. LinkedIn Corp.*, 2024 WL 3823806 (N.D. Cal. Aug. 13, 2024). The same outcome is warranted here.

## II. STATEMENT OF FACTS

CityMD hosts a Website where it encourages its patients to schedule their medical appointments. FAC ¶¶ 1, 38. In order to schedule an appointment, a patient must provide CityMD with several pieces of information, including the reason for their medical appointment. *Id.* Figure 4. Despite collecting private health information from its patients, CityMD embedded Defendant's LinkedIn Insight Tag on its Website, which enabled LinkedIn to intercept confidential information from CityMD's patients, such as the reasons for their medical appointments, so that Defendant can monetize the data via targeted advertising on LinkedIn. *Id.* ¶ 40.

Defendant's LinkedIn Insight Tag is a code snippet added to an advertiser's website (here citymd.com) which provides tools for the advertiser to optimize advertising campaigns, retarget

Website visitors who did not make a purchase or schedule services, and "learn more about [its] audiences." *Id.* ¶ 24. The current iteration of Defendant's LinkedIn Insight Tag is a JavaScript-based code which allows the LinkedIn Insight Tag to (1) track users and (2) circumvent third-party cookie blockers because it is a first-party cookie embedded within the Website itself. *Id.* ¶ 25. This means that even if third party cookies are blocked, the LinkedIn Insight Tag still captures consumers' information, frustrating the privacy choices of consumers. When a user who has signed in to LinkedIn (even if the user subsequently logs out) is browsing the Website (where the LinkedIn Insight Tag has been embedded), an HTTP request is sent using cookies, which includes information about the user's actions on the Website and data that differentiates users from one another which can be used to link that data to the user's LinkedIn profile. *Id.* ¶¶ 26-27. The cookies are used by LinkedIn to identify its members for Defendant's own advertising purposes. *Id.* ¶¶ 27-30. Through the LinkedIn Insight Tag, LinkedIn is able to make extremely personal inferences about individuals' demographics, intent, behavior, engagement, interests, buying decisions, and more. *Id.* ¶ 19. The personal information and communications obtained by LinkedIn are used to fuel various services offered via LinkedIn's Marketing Solutions including Ad Targeting, Matched Audiences, Audience Expansion, and LinkedIn Audience Network, which are then further used to identify and target other consumers in LinkedIn's network. *Id.* ¶ 20.

Through its use of the LinkedIn Insight Tag, Defendant tracked Plaintiff's and class members' activity from the moment they navigated to the Website, including "click" events (information about which page on the CityMD Website the patients viewed and the selections they made on the particular web page). *Id.* ¶ 43. In short, LinkedIn intercepts nearly all consumers' confidential communications with CityMD when they are searching for and scheduling medical appointments on the Website, including communications revealing the reasons for which Plaintiff and class members are seeking medical treatment. *Id.* ¶¶ 39-43.

Plaintiff is a LinkedIn user. *Id.* ¶ 7. Plaintiff scheduled a medical appointment on the CityMD Website. *Id.* ¶ 8. When scheduling her medical appointment, "Plaintiff selected a CityMD location, a time, who she was booking an appointment for, and why she was booking the appointment." *Id.* Unbeknownst to Plaintiff, Defendant intentionally intercepted her communications with the Website

via the LinkedIn Insight Tag. *Id*. Defendant used the LinkedIn Insight Tag to track Plaintiff and intercept her communications with CityMD, including communications that contained confidential information related to her medical appointment. *Id*. CityMD patients, including Plaintiff, were unaware that the LinkedIn Insight Tag was installed on the Website. Plaintiff and class members never consented, agreed, authorized, or otherwise permitted LinkedIn to intercept their confidential information and/or sell her data to advertisers. *Id.* ¶¶ 8, 46.

## III. ARGUMENT

### A. Plaintiff Did Not Consent To LinkedIn's Collection of Her Private Health Information

Defendant argues that Plaintiff's claims fail because "the alleged conduct that Plaintiff complains of is covered by the disclosures in LinkedIn's policies[.]" MTD at 7. That is wrong.

"On a motion to dismiss, the burden of proof to show consent rests with defendants." *Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1244, 1253 (N.D. Cal. 2024); *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1077–78 (N.D. Cal. 2023) ("On this motion to dismiss, the issue of consent is front and center and the burden of proof to show this exemption applies is on Meta."); *In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935, 949 (N.D. Cal. 2022) ("Google next claims there was lawful consent from both the account holder and the websites. Google bears the burden of proof on consent."). Moreover, determining how a reasonable consumer would understand Defendant's Privacy Policy is a factual question not appropriate for resolution on the pleadings alone. *See*, *e.g.*, *Fan v. NBA Properties Inc.*, 2024 WL 1297643, at *3 (N.D. Cal. Mar. 26, 2024) ("[w]hether reasonable consumers would understand, based on the … Terms of Use or … Privacy Policy, that by using the … website they were consenting to the disclosure of their personally identifiable information … is a question that should be resolved on a fuller factual record."); *Hilfiker Square, LLC v. Thrifty Payless, Inc.*, 2016 WL 7031283, at *3 (D. Or. Nov. 29, 2016) ("dismissal at this stage in the proceedings is inappropriate, especially because a determination regarding the parties' objectively reasonable expectations generally involves a question of fact"); *Turner v. Nuance Commc'ns, Inc.,* 735 F. Supp. 3d 1169 (N.D. Cal. 2024) (declining to dismiss CIPA claim based on consent where "there is a factual dispute over whether the DAA sufficiently notified Plaintiffs of

Nuance's conduct"); *McCoy v. Alphabet, Inc.,* 2021 WL 405816, at *6 (N.D. Cal. Feb. 2, 2021) ("At the motion to dismiss stage, the Court is not prepared to rule that the Privacy Policy establishes an absolute bar to Plaintiff's claims."); *Doe v. Meta Platforms, Inc.,* 690 F. Supp. 3d 1064, 1078 (N.D. Cal. 2023) ("Determination of whether actual consent was given depends on what Meta disclosed to healthcare providers, how it described and trained healthcare providers on the Pixel, and how the healthcare providers understood the Pixel worked and the information that then could or would be collected by Meta.").

Here, Plaintiff alleges that she did not consent to Defendant's interception of her confidential health information conveyed to CityMD. FAC ¶ 4; *see also id.* ¶ 8 ("LinkedIn used this software to track Plaintiff and intercept her communications with CityMD, including communications that contained confidential information related to her medical appointment. LinkedIn never received consent from Plaintiff or received permission to track or sell her data to advertisers. LinkedIn's acts and practices, as described herein, are an egregious breach of Plaintiff's privacy.").

Nevertheless, Defendant argues that Plaintiff consented to these interceptions based on LinkedIn's Privacy Policy. LinkedIn's own representations defeat this argument. While LinkedIn discloses that it may generally track its users' internet activity, it specifically warrants and represents that it will "only collect and process personal data about you where we have a lawful bases." FAC ¶ 35. Defendant's interpretation would render this express disclosure meaningless. In other words, based on the generic language in its Privacy Policy, Defendant argues it may lawfully collect any information its users provide online, including but not limited to their social security numbers, banking information, medical records, or other sensitive information. Such an argument not only defies common sense, but is also contrary to the law. *See Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 620 (N.D. Cal. 2021) ("In order for consent to be actual, the disclosures must 'explicitly notify' users of the practice at issue."); *In re Google Inc.*, 2013 WL 5423918, at *13 (N.D. Cal. Sept. 26, 2013) ("Google points to its Terms of Service and Privacy Policies, to which all Gmail and Google Apps users agreed, to contend that these users explicitly consented to the interceptions at issue. The Court finds, however, that those policies did not explicitly notify Plaintiffs that Google would intercept users' emails for the purposes of creating user profiles or providing targeted advertising.");

*Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 848 (N.D. Cal. 2014) ("However, as discussed above in the context of express consent, any consent with respect to the processing and sending of messages itself does not necessarily constitute consent to the specific practice alleged in this case—that is, the scanning of message content for use in targeted advertising."). Defendant's reliance on *Kaiser* is misplaced, as the court agreed that such determinations are not appropriately resolved on a motion to dismiss. 2024 WL 1589982, at *6 (N.D. Cal. Apr. 11, 2024).

**B. Plaintiff States a Claim Under CIPA §§ 631 and 632**

CIPA § 631 creates avenues for relief where a person: (1) "by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection ... with any telegraph or telephone wire, line, cable, or instrument"; (2) "willfully and without consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit"; and (3) "uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained[.]" *Heerde v. Learfield Commc'ns, LLC*, 2024 WL 3573874, at *4 (C.D. Cal. July 19, 2024) (quoting *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 897 (N.D. Cal. 2023)). Here, Plaintiff plausibly states a claim under each of the above-mentioned prongs of CIPA. CIPA § 637.2 provides a civil cause of action to anyone who violates § 631. *Smith v. Google, LLC*, 2024 WL 2808270, at *3 (N.D. Cal. June 3, 2024).

**1. <u>Choice of Law Considerations Are Premature.</u>**

Defendant argues Plaintiff cannot bring claims under the CIPA because she is a New York resident. MTD at 9. However, choice of law considerations are premature at the pleading stage. *See Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1079 (N.D. Cal. 2023) (rejecting as premature argument that CIPA claim should be dismissed because "none of the named plaintiffs are California residents").

As a threshold matter, there is no *per se* extraterritoriality bar against a non-citizen of California bringing a CIPA claim against a California entity like Defendant (FAC ¶ 18). *See Valentine v. NebuAd, Inc.*, 804 F. Supp. 2d 1022, 1028 (N.D. Cal. 2011) ("A legislative purpose that articulates an interest in protecting those within California is not inconsistent with also allowing non-

Californians to pursue claims against California residents. To conclude otherwise would mean the California Legislature intended to allow California residents to violate the CIPA … with impunity with respect to out-of-state individuals and entities, a result this Court declines to reach."); *Meta Platforms*, 690 F. Supp. 3d at 1079 ("I am denying the motion to dismiss the CIPA claim based on Meta's exterritoriality argument.").

Further, the choice of law question is best reserved for the class certification stage, where the issues will be ripe for review. *See Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 928 (N.D. Cal. 2013) ("[T]he Court finds that the choice of law determination in this case is better suited for the class certification stage because the record with respect to balancing the competing states' interests is not sufficiently developed."). Finally, "[c]ourts have declined to conduct such an analysis at the motion to dismiss stage where further development of the record is necessary to properly decide the choice-of-law question." *In re Apple Inc. Device Performance Litig.*, 386 F. Supp. 3d 1155, 1170 (N.D. Cal. 2019).

Here, Defendant, operating in California, very likely routed and analyzed Plaintiff's and class members' communications within California, facts that will ultimately inform the choice of law analysis. *See, e.g.*, *Valentine*, 804 F. Supp. 2d at 1024, 1026. As such, Defendant's choice of law argument is premature and is best deferred to class certification, when the Court can confront the issues on a more developed record. *Busby v. Invoca, Inc.*, 2025 WL 822664, at *1 (N.D. Cal. Mar. 14, 2025) ("In any event, questions of class definition and claims are properly addressed in class certification proceedings, and not in a motion to dismiss.").

### 2. LinkedIn Was Not a Party to the Communications Between Plaintiff and CityMD, It Was an Eavesdropper.

Defendant next argues "Plaintiff has not pled that LinkedIn acted as anything more than an extension of CityMD." MTD at 10. That is wrong.

First, the question of whether Defendant is a party to the communication or a third-party eavesdropper is a question of fact not suitable for determination on a motion to dismiss. *Kauffman v. Papa John's Int'l, Inc.*, 2024 WL 171363, at *7 (S.D. Cal. Jan. 12, 2024) ("Whether FullStory acts akin to a tape recorder or whether its actions are closer to 'an eavesdropper standing outside the door'

is a question of fact which is better answered after discovery into the session replay technical context of the case."); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1081 (C.D. Cal. 2021) ("The question thus becomes, in analogue terms: is Quantum Metric a tape recorder held by Lululemon, or is it an eavesdropper standing outside the door? This is a question of fact for a jury, best answered after discovery into the storage mechanics of Session Replay."); *Esparza v. Kohl's, Inc.*, 723 F. Supp. 3d 934, 942 (S.D. Cal. 2024) ("The Court finds here that whether ASI acts akin to a tape recorder or whether its actions are closer to 'an eavesdropper standing outside the door' is a question of fact which is better answered after discovery.").

Second, Plaintiff alleges that she "never consented, agreed, authorized, or otherwise permitted LinkedIn to intercept her confidential health information." FAC ¶ 46; *see also id.* ¶ 118 ("Plaintiff and Class Members expected their communications to CityMD to be confined to CityMD in part, due to the protected nature of the health information at issue. Plaintiff and Class Members did not expect third parties, like LinkedIn, to secretly eavesdrop upon or record this confidential information and their communications."). Despite this, Defendant has intercepted Plaintiff's and class members' communications with CityMD and used the data itself "to fuel various services offered via LinkedIn's Marketing Solutions including Ad Targeting, Matched Audiences, Audience Expansion, and LinkedIn Audience Network." *Id.* ¶ 20.

In short, Defendant uses the data it receives from the LinkedIn Insight Tag to group users into audience groups, which it then sells to advertisers by displaying their ads to the targeted groups it created through the intercepted data from the Website (and other websites using the LinkedIn Insight Tag). *See id.* ¶ 42 ("Through the LinkedIn Insight Tag, Defendant intercepted consumers confidential information related to their medical appointments in order to monetize that data for targeted advertising."). Defendant's use of the intercepted data for its own advertising purposes brings it outside the scope of a mere "vendor."

Judge Pitts, considering a similar case involving a CIPA § 631 claim related to use of the LinkedIn Insight Tag on a different website, squarely rejected the same argument Defendant makes here, reasoning that "LinkedIn received this sensitive data and read and used it for its own marketing services." *Jackson v. LinkedIn Corp.*, 2024 WL 3823806, at *5 (N.D. Cal. Aug. 13, 2024). Plaintiff

here makes nearly identical allegations as in *Jackson* which led Judge Pitts to conclude that LinkedIn was more than just a vendor with regard to the LinkedIn Insight Tag. *Compare Jackson*, 2024 WL 3823806, at *5 ("LinkedIn's Marketing Services monetizes the collected data through the sale of [ads]."); *id.* ("LinkedIn is also learning the contents of communications between website users and the DMV. This enables advertisers to target users with relevant content or advertisement[s] using the personal information and data that LinkedIn harvested.") *with* FAC ¶ 20 ("The personal information and communications obtained by LinkedIn are used to fuel various services offered via LinkedIn's Marketing Solutions including Ad Targeting, Matched Audiences, Audience Expansion, and LinkedIn Audience Network."); *id.* ¶ 42 ("Through the LinkedIn Insight Tag, Defendant intercepted consumers confidential information related to their medical appointments in order to monetize that data for targeted advertising.").[1] Defendant's "acquisition and review of the disability information by LinkedIn for advertising purposes qualifies as interception under CIPA." *Jackson*, 2024 WL 3823806, at *5.

In *Smith v. Google, LLC*, 2024 WL 2808270 (N.D. Cal. July 2, 2024), Judge Pitts reached the same conclusion regarding similar tracking software offered by Google. There, Google, like Defendant here, offered "tools that track how users interact with websites[,]" including "information about the user's browser, language, clicks, downloads, and form interactions, as well as the titles of webpages, and matches the information it collects with a user's location, gender, and general interests." *Id.* at *1. Also like the LinkedIn Insight Tag, the data collected by Google's tools was "sent in real time to Google, which store[d] the data and processe[d] it into reports." *Id.* Like LinkedIn here, Google benefitted from the collection of the data because Google used the "data to power its algorithms and learn about user habits." *Id.* And as Defendant does here, Google argued that it was merely acting as a vendor by providing software tools for the benefit of its customers, and therefore was not liable under CIPA § 631. *Id.* at *4 ("Google . . . argues that the Section 631 claim

[1] Defendant's argument largely devolves into fact-based arguments and baseless contentions that Plaintiff's factual allegations regarding Defendant's use of the data are somehow "conclusory" (MTD at 12). But Defendant cannot evade the fact that nearly identical allegations regarding the *very same software* were upheld in *Jackson*.

should be dismissed because Google acted as a 'mere vendor' of a tool that allows websites to record their own interactions with their users.").

However, the *Smith* court rejected Google's argument, finding that Google reads and uses the analytics data by: (1) using the data to power its algorithms; (2) gaining detailed information about its users; and (3) collecting and aggregating the data to present to its customers on a dashboard. *Id.*, at *4. The court also noted that Google provides the tools for free, "suggesting that Google derives some benefit when websites use the tool." *Id.* The court concluded that "Google is not simply a vendor of a tool that websites can use to 'record' their own users' interactions on their websites, but rather that Google read or used the data collected about these users." *Id.* at *5. So too here, Defendant's LinkedIn Insight Tag records "click" events (FAC ¶ 41), which intercepts personal information regarding the patients' medical appointment (*id.*), and Defendant used the data to fuel its own advertising services (*id.* ¶ 20) and to provide "in-depth campaign reporting" to advertisers using the LinkedIn Insight Tag (*id.* ¶ 24). As such, the *Smith* decision is directly analogous to this matter.

In both *Jackson* and *Smith*, Judge Pitts distinguished and declined to follow the primary authority relied upon by Defendant, *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832 (N.D. Cal. 2021) (*see* MTD at 10), on the grounds that in both *Jackson* and *Smith*, Defendant and Google actually used the data for their own purposes, whereas in *Graham* there were "no allegations here that FullStory intercepted and used the data itself." This case is akin to *Jackson* (which also involved the same LinkedIn Insight Tag) and *Smith*, as Plaintiff alleges that Defendant used the data collected from the LinkedIn Insight Tag for its own marketing purposes. FAC ¶¶ 20, 42; *see also Javier*, 649 F. Supp. 3d at 901 ("Javier has plausibly alleged that ActiveProspect is a third party under Section 631, and Defendants' argument that ActiveProspect is an 'extension' of Assurance does not provide a basis for dismissal at this stage."); *Gladstone v. Amazon Web Servs., Inc.*, 739 F. Supp. 3d 846, 855 (W.D. Wash. 2024) ("Plaintiff's allegations demonstrate that Defendant has capabilities beyond that of a mere tape recorder, and there is no evidence that Defendant is incapable of using the data for any other purpose."); *Heerde*, 2024 WL 3573874, at *7 (agreeing with *Javier* and finding that "Plaintiffs allege plausibly Defendants were third-party eavesdroppers to Plaintiffs'

communications."); *Turner v. Nuance Comm'ns, Inc.*, 2024 WL 2750017, at *8-11 (N.D. Cal. May 28, 2024).

Defendant also relies on *Doe I v. Google LLC,* 2024 WL 3490744 (N.D. Cal. July 22, 2024), but that case is distinguishable. There, the court conceded that the "allegation that Google creates reports of user activity on a given web property does seem to support an inference that Google is doing more than simply acting as a tape recorder" but that the plaintiffs did not "adequately allege where on a web property the source code actually exists." *Id.* at *6. Here, in contrast, Plaintiff alleges in detail where on the CityMD Website the LinkedIn Insight Tag is embedded and the exact information transmitted to LinkedIn. FAC ¶¶ 38-47. Of note, another court in this District reached an alternative conclusion to that of *Doe I v. Google* on similar facts, further undermining its viability. *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1078-80 (N.D. Cal. 2023), *motion to certify appeal denied*, 2024 WL 4375776 (N.D. Cal. Oct. 2, 2024).

Defendant further argues that Plaintiff's CIPA claim fails because "[n]one of her allegations regarding the Insight Tag are tethered to CityMD, let alone Plaintiff's interactions with CityMD's website." MTD at 12. This argument is baseless. Plaintiff alleges: (1) she scheduled a medical appointment on the CityMD Website and selected the location, time, and reason for the appointment (FAC ¶ 8); (2) that unbeknownst to her, Defendant tracked her private activity on the Website using the LinkedIn Insight Tag (*id.*); (3) precisely how Defendant intercepts information from the Website (*id.* ¶¶ 39-45); and (4) that Defendant specifically intercepted communications between Plaintiff and the Website that contained confidential information. (*id.* ¶ 4). Accordingly, Defendant's argument ignores Plaintiff's well-pled allegations and should be rejected accordingly.

### 3. <u>Plaintiff Plausibly Alleges a Claim Under the Second Clause of CIPA § 631(a).</u>[2]

To plausibly allege a violation of the eavesdropping prong (second clause) of CIPA, a plaintiff must allege that the violator (1) read, or attempted to read, contents[3] of a message or similar

---

[2] Plaintiff does not bring claims under clause one of CIPA § 631(a).

[3] "Contents" "include[ ] any information concerning the substance, purport, or meaning of [a] communication.'" *See* 18 U.S.C. § 2510(8); *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) ("The analysis for a violation of CIPA is the same as that under the federal Wiretap Act.") (citation omitted).

communication; (2) without consent of all the parties; (3) while the message was in transit, passing over a wire, or being sent or received from within California; and (4) did so willingly. *See Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969, 976-77 (C.D. Cal. 2023). Here, Plaintiff's allegations satisfy each element.

*First*, Plaintiff alleges Defendant intercepted Plaintiff's communications willfully and intentionally. FAC ¶¶ 4, 9, 36; *see also Jackson*, 2024 WL 3823806, at *5-6 (denying motion to dismiss based on the second clause of CIPA). Indeed, the very purpose and function of the LinkedIn Insight Tag is to intercept an individual's interaction with a website. *Id.* In other words, Defendant intends to intercept all information obtained through the LinkedIn Insight Tag. *See Meta Platforms*, 690 F. Supp. 3d at 1079 ("Meta's point that Pixel captures some data that healthcare entities may permissibly share with Meta might provide a defense to some portion of plaintiffs' CIPA claim, but it does not negate the plausible allegations that sensitive healthcare information is intentionally captured and transmitted to Meta."). Further, "[w]hether a person possesses the requisite intent under CIPA is generally a question of fact." *Gladstone*, 739 F. Supp. 3d 846; *see also Smith*, 2024 WL 2808270, at *5 ("While Google argues that judicially noticeable policy documents suggest that Google did not actually want to receive personally identifiable information and expressly prohibited developers from transmitting such data, this presents a question of fact that the Court cannot resolve at this stage."). Defendant's reliance on *Doe* is unpersuasive, as Judge Chhabria noted "[i]t's possible that the difference between Judge Orrick's ruling and this one lies in what precisely was alleged in each complaint." 2024 WL 3490744, at *5. Other courts have rejected the same arguments made by Defendant here. *E.g.*, *Gladstone*, 739 F. Supp. 3d at 860 ("Defendant correctly points out that it contractually requires companies that use Amazon Connect to provide notice and obtain consent from their customers, but the Court is not convinced that [Defendant's] inclusion of a catch-all provision requiring its customers to comply with the law generally is enough to satisfy its legal obligations under CIPA.") (internal citations omitted).

*Second*, Plaintiff alleges that Defendant attempted to read or learn the contents of Plaintiff's communications with the Website while the same were in transit. *Id.* ¶ 66. To satisfy the so-called "in transit" requirement, Plaintiff need only "demonstrate a party intercepted the communication

during its transmission, rather than once it was placed in electronic storage." *Heiting v. Taro Pharms. USA, Inc.*, 728 F. Supp. 3d 1112, 1125 (C.D. Cal. 2024). Here, Plaintiff more than plausibly explains how Defendant uses the LinkedIn Insight Tag to intercept Plaintiff's and class members' communications with the Website in real time, while the communications were in transit. *Id.* ¶¶ 23-26, 39-45. Specifically, Defendant intercepted Plaintiff's and class members' communications at the time that Plaintiff and class members input said communications into the Website, as the function of the LinkedIn Insight Tag duplicated the communications with the Website and sent the same to LinkedIn. *Id*. Plaintiff's allegations thereby place Defendant on sufficient notice of the basis of what is alleged. *See Valenzuela*, 686 F. Supp. 3d at 979 ("[T]he SAC makes quite clear that Valenzuela's allegation is that Akamai's code intercepts chat messages in real time and stores transcripts, which gives Nationwide plenty of notice on what is alleged . . . Nothing more than this combination of plausibility and notice is required at this stage."). Notably, in *Jackson*, the court concluded that the same LinkedIn Insight Tag at issue here violated the second clause of CIPA, concluding that the tag intercepts communications "in transit." 2024 WL 3823806, at *5-6.

*Third*, Plaintiff does allege that her communications were intercepted by LinkedIn in California. As conceded by Defendant, the CIPA provides that "the defendant must intercept the plaintiff's 'communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state.'" MTD at 15 (quoting § 631). Here, Defendant, operating in California, intercepted Plaintiff's and class members' communications from California. That is sufficient. *See, e.g.*, *Valentine*, 804 F. Supp. 2d at 1028 ("A legislative purpose that articulates an interest in protecting those within California is not inconsistent with also allowing non-Californians to pursue claims against California residents.").

### 4. Plaintiff Plausibly Alleges a Claim Under the Third Clause of CIPA § 631(a).

The third clause of CIPA creates liability where Defendant uses or attempts to use data unlawfully obtained in violation of either the first or second clauses of CIPA. Here, Defendant violated the third clause of CIPA because it used the data it unlawfully intercepted in violation of the first and second clauses of CIPA to learn sensitive, confidential information regarding its users (by

intercepting information input by users onto the Website and connecting it to their LinkedIn account). *Meta Platforms*, 690 F. Supp. 3d at 1079-80; *Jackson*, 2024 WL 3823806 at *5-6. Because Plaintiff has established a violation of the second clause of CIPA, Defendant has similarly violated the third.

**5. <u>Plaintiff States a Claim Under CIPA § 632</u>**

Cal. Penal Code § 632(a) states, in pertinent part:

> (a) A person who, intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio, shall be punished by a fine not exceeding two thousand five hundred dollars ($2,500) per violation . . .

Cal. Penal Code § 632(c) defines "confidential communication" as:

> any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto, but excludes a communication made in a public gathering or in any legislative, judicial, executive, or administrative proceeding open to the public, or in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded.

Plaintiff states a claim under Cal. Penal Code § 632(a) because Defendant, without Plaintiff's consent, eavesdropped on Plaintiff's confidential communications with the Website, which included sensitive personal and health information disclosed when making a medical appointment on the Website, including information related to her medical appointment. FAC ¶¶ 7-8. The LinkedIn Insight Tag is an electronic recording device because it functions to electronically intercept and record Plaintiff's interactions with the Website. *Id.* ¶¶ 24-25, 41-43. Plaintiff had a reasonable expectation of privacy when communicating with the Website because private health information is among the most sensitive information relevant to any individual, which is why disclosure of such information is heavily regulated by federal law. *See, e.g.*, 42 U.S.C. § 1320d-6; 45 C.F.R. Part 160 and 164. Plaintiff had every reason to believe that, when scheduling a medical appointment on the Website, information conveyed by Plaintiff to CityMD would remain private as between those two

parties, without an unknown third-party eavesdropping on the communications. FAC ¶ 2 ("Patients reasonably expect the sensitive and legally protected information related to their [medical] appointment will remain confidential and protected from third parties."); *id.* ¶ 74 ("Plaintiff's and Class members' communications to CityMD, such as why they were booking appointments, were confidential communications for purposes of § 632, because Plaintiff and Class Members had an objectively reasonable expectation of privacy in this data.").

Defendant challenges several of the elements of Plaintiff's CIPA § 632(a) claim, but none of Defendant's arguments have merit. First, Defendant argues that it did not intend to record Plaintiff's confidential communications. MTD at 16. That is wrong. Defendant intended to record Plaintiff's confidential communications because the very purpose of the LinkedIn Insight Tag is to record consumers' interactions with the Website. FAC ¶¶ 17-37. As mentioned above, the CityMD Website allows patients to book medical appointments online. *Id.* ¶ 38. The LinkedIn Insight Tag also has a specific purpose, namely, to intercept and record a consumer's interaction with a website. *Id.* ¶ 9. Defendant nevertheless permitted CityMD to install the LinkedIn Insight Tag and LinkedIn itself used that confidential information by incorporating it into its algorithms for the purpose of creating targeted audience groups and selling advertising on its platform. *Id.* ¶¶ 20, 42.

*Rojas v. HSBC Card Servs. Inc.*, 20 Cal. App. 5th 427 (2018) is instructive. There, the plaintiff brought suit under CIPA §§ 632 and 632.7 because the defendant "employed a full-time telephone call recording system" which was "activated when an employee placed a telephone call" and recorded personal calls made by the plaintiff without consent. *Id.* at 430. The defendant argued "it did not intend to record any specific call that, in fact, contained Rojas's confidential communications, and [. . .] that it did not intend to record any specific call between Rojas and her daughter." *Id.* at 433. The court rejected the defendant's argument, finding that "neither position is defensible." *Id.* The court accepted the plaintiff's argument that "because HSBC was using, and knew it was using, a full-time telephone call recording system that recorded *all calls* during the period of time when HSBC recorded the 317 conversations at issue, HSBC *intentionally* recorded the calls that contained Rojas's confidential communications—in violation of both sections 632(a) and 632.7(a)." *Id.* The court concluded the defendant "did not meet its burden of establishing as a

matter of law that it did not have 'knowledge to a substantial certainty that [its] use of the equipment w[ould] result in the recordation of a confidential conversation' of an employee and a third party like Rojas." *Id.* at 436 (quoting *People v. Superior Ct. of Los Angeles Cnty.*, 70 Cal. 2d 123, 134 (1969)). So too here, Defendant's LinkedIn Insight Tag was activated when Plaintiff and class members navigated to the Website, and it recorded all communications with the Website indiscriminately, including those involving Plaintiff's and class members' private health information, in violation of Cal. Penal Code § 632(a).

Defendant argues that its alleged "policies specifically prohibiting advertising customers from sending sensitive information via the Insight Tag" undermine Plaintiff's claim. MTD at 16. That is wrong. Defendant made no effort to rectify the fact that CityMD was using the LinkedIn Insight Tag to transmit confidential information to Defendant, nor did Defendant destroy any such information; on the contrary, Defendant willingly incorporated the information into its algorithms and used it for the purpose of augmenting its advertising machinery, and used Plaintiff's and class members' private health information as a means of targeting them for advertising. *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 827-28 (N.D. Cal. 2020) ("[T]he Court finds that Defendants' failure to rectify the defect causing 'false accepts' or destroy the recordings produced under such circumstances could plausibly be considered 'intentional' rather than 'a result of accident or mistake.'"); *Meta Platforms*, 690 F. Supp. 3d at 1076 ("While plaintiffs acknowledge that Meta may tell third parties and Facebook users that it intends to prevent receipt of sensitive health information, plaintiffs contend that is not what Meta *really* intends. . . What Meta's true intent is, what steps it actually took to prevent receipt of health information, the efficacy of its filtering tools, and the technological feasibility of implementing other measures to prevent the transfer of health information, all turn on disputed questions of fact that need development on a full evidentiary record. . . At this stage, intent has been adequately alleged.").

Second, Defendant argues that the LinkedIn Insight Tag is not a "device" under CIPA. MTD at 16. As Defendant acknowledges, however, numerous courts have held that software code such as the LinkedIn Insight Tag qualifies as a device under CIPA. *Meta Platforms*, 690 F. Supp. 3d at 1080 ("I agree that the Pixel software is a device under section 632(a)"). Indeed, this Court has recently

held that software constitutes a "device" under CIPA, finding *Doe v. Meta Platforms* persuasive:

> Recent decisions in this Circuit have rejected Apple's interpretation and found that "software is a device under section 632(a)." *Doe v. Meta Platforms, Inc.*, 2023 WL 5837443, at *7 (N.D. Cal. Sept. 7, 2023); *see also Yockey v. Salesforce, Inc.*, No. 22-CV-09067-JST, 2024 WL 3875785, at *7 (N.D. Cal. Aug. 16, 2024) (agreeing that "software qualifies as a device under Section 632" and collecting cases). The Court finds those decisions persuasive. Plaintiffs have plausibly alleged that the Apple Apps at issue in this case constitute a "device" under Section 632.

*Libman v. Apple, Inc.*, 2024 WL 4314791, at *13 (N.D. Cal. Sept. 26, 2024) (Davila, J.). Defendant's reliance on the *In re Google Location History Litig.* is unpersuasive, as that case concerned different technology than what is at issue here. 428 F. Supp. 3d at 194.

Finally, Defendant argues that Plaintiff's communications were not "confidential" in the context of Section 632 because there is a "presumption that such communications do not give rise to the requisite expectation." MTD at 17 (internal quotations omitted). But there is no presumption that internet-based communications are not confidential. *See Brown v. Google LLC*, 685 F. Supp. 3d 909, 938 (N.D. Cal. 2023) ("California courts have never recognized a legal 'presumption' that internet communications are not confidential under Section 632."); *Smith*, 735 F. Supp. 3d at 1199 (same). A communication is confidential under Section 632 if a party "has an objectively reasonable expectation that the conversation is not being overheard or recorded." *Flanagan v. Flanagan*, 41 P. 3d 575, 582 (Cal. 2002); *Brown*, 685 F. Supp. 3d at 939. Whether a plaintiff had an objectively reasonable expectation that her confidential communications were not being recorded often presents factual issues not appropriately resolved at the pleading stage. *See Lieberman v. KCOP Television, Inc.*, 110 Cal.App.4th 156, 169, 1 Cal.Rptr.3d 536 (2003) ("It is for the jury to decide whether under the circumstances presented [plaintiff] could have *reasonably* expected that the communications were private."); *Brown*, 685 F. Supp. 3d at 937 (finding confidentiality under Section 632 to be "a fact-intensive inquiry" not appropriately resolved at summary judgment). Here, Plaintiff possessed an objectively reasonable expectation the sensitive details of her medical appointment were not being recorded. Defendant has failed to produce any evidence that Plaintiff would have been aware that the sensitive aspects of her communications with her healthcare provider were being recorded by a

third party for advertising purposes.

#### 6. <u>Plaintiff Alleges That LinkedIn Intercepted A Communication</u>

Defendant argues that Plaintiff's Section 631 and 632 claims should also be dismissed due to *Vita v. New England Baptist Hosp.*, where the Supreme Judicial Court of Massachusetts held that Massachusetts' wiretap act did not apply to online communications. MTD at 18. However, in reaching this decision, the court relied heavily on the legislative history of the statute. *Vita*, 494 Mass. 824, 843 (2024). Here, Defendant does not cite to *any* legislative history to support a similar finding under the CIPA. Indeed, the Ninth Circuit has already found that the CIPA "applies to Internet communications." *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1 (9th Cir. May 31, 2022). Defendant's argument is without merit.

### C. Plaintiff States A Claim Under the Wiretap Act

Defendant argues that Plaintiff's claim under the Wiretap Act fails because it was a party to the communication. MTD at 19. But the party exception does not apply if the "communication is intercepted for the purpose of committing any tortious or criminal act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(2)(d). In other words, if Defendant intercepted Plaintiff's communications "for the purpose of committing any tortious or criminal act," it cannot escape liability. The crime-tort exception focuses on whether "the *purpose* for the interception—its intended use—was criminal or tortious." *Sussman v. Am. Broad. Companies, Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999) (emphasis in original) (internal quotations and citations omitted).

Defendant's conduct falls squarely within the crime-tort exception because it intended to violate various tort and criminal laws through the interception of Plaintiff's communications, including HIPAA's criminal prohibitions against disclosing "individually identifiable health information" without authorization. FAC ¶¶ 51, 91-93. Multiple federal courts have found substantially similar allegations sufficient to trigger the crime-tort exception. *See Kurowski v. Rush Sys. For Health*, 2023 WL 8544084, at *3 (N.D. Ill. Dec. 11, 2023) ("*Kurowski III*") (finding allegations "sufficient to invoke the HIPAA exception-to-the-party-exception…[and that the

complaint] plausibly state[d] a claim for relief under the Wiretap Act"); *In re Grp. Health Plan Litig.*, 2023 WL 8850243, at *8 (D. Minn. Dec. 21, 2023) (same); *Kane v. Univ. of Rochester*, 2024 WL 1178340, at *7 (W.D.N.Y. Mar. 19, 2024) (same); *Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d 916, 927–28 (D. Minn. 2024) (finding allegations that defendant violated HIPAA's disclosure rule was sufficient to invoke the crime-tort exception); *see also In re Meta Pixel Healthcare Litig.,* 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022) ("plaintiffs may be able to show that the crime-tort exception applies" based on allegations "that the use of patient data for advertising in the absence of express written consent is criminal and tortious"); *B.K. v. Desert Care Network,* 2024 WL 1343305, at *6 (C.D. Cal. Feb. 1, 2024) (finding the crime-tort exception applicable based on plaintiffs' allegations that defendant intercepted communications regarding "requests to refill prescriptions and appointment scheduling inquiries" in "violation of various state tort claims and state and federal laws").

Defendant's recycled arguments concerning consent, intent, and the in-transit requirement fail for the same reasons discussed, *supra*. *See Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) ("The analysis for a violation of CIPA is the same as that under the federal Wiretap Act.").

### D. Plaintiff States a Claim for Invasion of Privacy Under the California Constitution

To state a claim for invasion of privacy under the California Constitution, Plaintiff "must show that (1) [she] possess[es] a legally protected privacy interest, (2) [she] maintain[s] a reasonable expectation of privacy, and (3) the intrusion is 'so serious ... as to constitute an egregious breach of the social norms' such that the breach is 'highly offensive.'" *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020) (quoting *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (2009)).

First, Plaintiff has a legally protected privacy interest in her protected health information, which was intercepted by Defendant. *Norman-Bloodsaw v. Lawrence Berkeley Lab'y*, 135 F.3d 1260, 1269 (9th Cir. 1998) ("The constitutionally protected privacy interest in avoiding disclosure of personal matters clearly encompasses medical information and its confidentiality."). As discussed

above, Plaintiff's information related to her medical appointments is protected by federal law. *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 799; 42 U.S.C. § 1320d-6; 45 C.F.R. Part 160 and 164. In a similar case involving an embedded software pixel on the webpage of a health care provider, the court found the plaintiffs had a protected privacy interest in health-related information disclosed to an online health care provider:

> HIPAA defines "protected health information," or "PHI" as "individually identifiable" information that is "created or received by a health care provider" and that "[r]elates to the past, present, or future physical or mental health or condition of an individual" or the "provision of health care to an individual." 45 C.F.R. § 160.103. Having reviewed Plaintiffs' allegations, [. . .]the Court finds that their interactions on Defendant's website, while "unauthenticated" or publicly facing, plausibly involve PHI. As to whether the information is individually identifiable, all three Plaintiffs plead that they are Facebook users. . . Plaintiffs allege at length how Meta Pixel uses JavaScript code to connect internet activity to a specific individual using IP addresses and Facebook credentials. . . Turning to the information that is tracked and whether it is protected, Plaintiff Cousin alleges that she used Sharp's website to search for a primary care physician. . .

*Cousin*, 702 F. Supp. 3d at 973.

So too here, Plaintiff's communications with the Website contained PHI (including information related to her medical appointment). Further, Defendant embedded the LinkedIn Insight Tag (using JavaScript code) which transmitted Plaintiff's private health information back to it for purposes of augmenting Defendant's marketing algorithms.

Nonetheless, Defendant argues that the information intercepted by LinkedIn is not sufficiently sensitive to support her invasion of privacy claim. MTD at 20-21. That is wrong, even on its own terms. The Complaint makes clear that "LinkedIn used this software to track Plaintiff and intercept her communications with ReflexMD, including communications that contained confidential prescription information" such as her purchase of the medication (Compl. ¶ 6). Further, because the LinkedIn Insight Tag captured all of Plaintiff's "click" events on the Website, it necessarily captured her responses to ReflexMD's pre-screening survey which determined whether Plaintiff was eligible to purchase the medication, which constitutes protected health information. *Id.*

¶¶ 37-43; *see also* 42 U.S.C. § 1320d ("The term 'health information' means any information, whether oral or recorded in any form or medium, that-- (A) is created or received by a health care provider, health plan, public health authority, employer, life insurer, school or university, or health care clearinghouse; and (B) relates to the past, present, or future physical or mental health or condition of an individual, the provision of health care to an individual, or the past, present, or future payment for the provision of health care to an individual.") (emphasis added); *Robbins v. Mscripts, LLC*, 2023 WL 5723220, at *1 (N.D. Cal. Sept. 5, 2023) (finding that protected health information included "name, date of birth, address, insurance, and prescription medications").

Defendant continues that "Plaintiff fails to allege that LinkedIn connects isolated information sent via separate transmissions to infer a narrative identifying a person as having booked a medical appointment." MTD at 21. However, Figure 1 in Plaintiff's FAC establishes this standing in isolation. From this one click event LinkedIn intercepted information related to the fact that Plaintiff clicked the button "book a visit," on the CityMD Website. *Id.* When Plaintiff clicked this button LinkedIn also intercepted the "href" value, which disclosed that the selection was in relation to "/urgent-care-locations." *Id.* Based on this single event, LinkedIn was aware that Plaintiff was booking a medical appointment with CityMD at one of its urgent care locations. LinkedIn can easily and reasonably infer the meaning of the remaining button clicks made on the CityMD Webite, all of which are tied to Plaintiff's unique LinkedIn profile and unique web-browsing session. *See* FAC Figures 2-5.

Second, Plaintiff had a reasonable expectation of privacy that her health-related interactions with an online health care provider would be confidential. The Ninth Circuit recognized in *Facebook Internet Tracking* that "individuals maintain the expectation that entities will not be able to collect . . . broad swaths of personal information absent consent." 956 F.3d 589, 604 n.7 (9th Cir. 2020). "The question is not necessarily whether Plaintiffs maintained a reasonable expectation of privacy in the information in and of itself," but "whether the data itself is sensitive *and* whether the manner it was collected . . . violates social norms." *Id.* at 606 (emphasis in original) (rejecting the suggestion "that Plaintiffs need to identify specific, sensitive information that Facebook collected").

Applying the Ninth Circuit's analysis in *Facebook Internet Tracking*, the court in *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 800, a factually analogous case, found that the plaintiffs there "had an objectively reasonable expectation that their communications with their medical providers were confidential based on the laws and regulations protecting the confidentiality of medical information." This analysis applies with equal weight to Plaintiff's communications with CityMD, a medical provider to whom Plaintiff disclosed information to book an urgent care appointment.

Defendant reiterates its argument attempting to cast Plaintiff's interactions with the Website as mere "commercial activity" (MTD at 22), but that argument fails for the reasons set forth in Section III.B.5. *See In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 799 (distinguishing private health information sent over the internet from mere routine commercial behavior and noting that disclosure of private health information over the internet is properly considered confidential).

Next, Defendant argues that the generalized disclosures in its Privacy Policy somehow diminish Plaintiff's reasonable expectation of privacy. MTD at 22. However, LinkedIn's Privacy Policy makes no mention of LinkedIn intercepting the private health information of Plaintiff and class members and does not state that Plaintiff will be wiretapped when visiting the website of a healthcare provider such as CityMD. Indeed, LinkedIn's Privacy Policy expressly states that it "will only collect and process personal data about you where we have lawful bases" (FAC ¶ 35), giving Plaintiff and class members the reasonable belief that it will not intercept, receive, and use their protected health information, when in fact it does.

Third, Defendant's conduct was highly offensive. As a threshold matter, "questions of whether conduct is 'egregious,' 'offensive,' or violates 'social norms' tend by their very nature to be subjective . . . [and] these questions are typically more appropriately resolved by a jury." *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1139 (E.D. Cal. 2021); *see also In re Google Location Hist. Litig.*, 514 F. Supp. 3d 1147, 1157 (N.D. Cal. 2021) ("Whether [defendant's] collection and storage of location data when Location History was set to off was highly offensive to a reasonable person is a question of fact.") (citing *Facebook Internet Tracking*, 956 F.3d at 606). Indeed, the Ninth Circuit

held that this determination "requires a holistic consideration of factors" and raises "an issue that cannot be resolved at the pleading stage." *Facebook Internet Tracking*, 956 F.3d at 606.

Here, Plaintiff has identified sufficient facts to survive a motion to dismiss because she pleads that Defendant surreptitiously collected her private health information in unexpected ways (and contrary to Defendant's express assertions in its Privacy Policy). Indeed, under similar circumstances, the court in *In re Meta Pixel Healthcare Litig.* found:

> There is support for plaintiffs' position that Meta has behaved egregiously. By enacting criminal and civil statutes forbidding the disclosure of protected health information without proper authorization, Congress has made policy decisions regarding the importance of safekeeping this information. *See, e.g.*, 42 U.S.C. § 1320d-6 (providing criminal and civil penalties for disclosing protected health information without authorization); 45 C.F.R. § 164.508 (requiring a "valid authorization" for use or disclosure of protected health information). Courts have also found that taking personal contact information without consent could be deemed highly offensive. *See Opperman v. Path*, 87 F. Supp. 3d 1018, 1060–61 (N.D. Cal. 2014) (finding that a jury must decide whether the "surreptitious theft of personal contact information" is highly offensive). Finally, I note that Meta's policies forbid the transmission of health-related information, which the Ninth Circuit has found to be relevant in the "highly offensive" inquiry. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 606 (finding that highly offensive element was sufficiently pleaded where Facebook collected full-string detailed URLs and where "Plaintiffs have alleged that internal Facebook communications reveal that the company's own officials recognized these practices as a problematic privacy issue."). These arguments have merit.

647 F. Supp. 3d at 800-01.

The same analysis applies here. As discussed above, information relating to Plaintiff's medical appointments is entitled to stringent protection under the law. Further, LinkedIn purports to forbid the transmission of health-related information with regard to the LinkedIn Insight Tag (even though it acts contrary to its stated policy), which reveals that Defendant's own officials recognized that collection of such data is a problematic privacy issue.

Defendant argues that its conduct was not highly offensive because it allegedly lacked a "culpable motive." MTD at 25. But questions of intent are generally questions of fact. *Oddo v.*

*United Techs. Corp.*, 2022 WL 577663, at *16 (C.D. Cal. Jan. 3, 2022). Further, for the reasons set forth in Section III.B.5., above, Plaintiff has plausibly plead facts establishing that Defendant acted with intent in eavesdropping on Plaintiff's interactions with the Website, including by permitting CityMD, a healthcare provider, to embed the LinkedIn Insight Tag into its Website, and by using the intercepted information to improve its advertising services and algorithms. *See In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1233 (C.D. Cal. 2017) (the "collection of intimate or sensitive personally identifiable information may amount to a highly offensive intrusion"). Further, "more routine data collection practices may be highly offensive if a defendant disregards consumers' privacy choices while simultaneously 'h[olding] itself out as respecting' them.'" *Id.* (quoting *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 292 (3d Cir. 2016)). Here, Defendant disguised the LinkedIn Insight Tag as a first-party cookie so it could circumvent third-party cookie blockers and collected Plaintiff's and class members' personal health information despite expressly stating that it "will only collect and process personal data about you where we have lawful bases." FAC ¶ 35. Therefore, LinkedIn's conduct is egregious because it disregarded consumers' privacy choices while holding itself out as respecting them.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss.

Dated: April 11, 2025

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: *__/s/ Sarah N. Westcot__*
Sarah N. Westcot

Sarah N. Westcot (SBN 264916)
701 Brickell Avenue, Suite 2100
Miami, FL 33133
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
E-Mail: swestcot@bursor.com

*Counsel for Plaintiff*