1

2

3

4

5

6

7

8

COOLEY LLP
JEFFREY M. GUTKIN (216083)
(jgutkin@cooley.com)
AARTI REDDY (274889)
(areddy@cooley.com)
AMY M. SMITH (287813)
(amsmith@cooley.com)
JULIA M. IRWIN (352861)
(jirwin@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, California 94111-4004
Telephone:    +1 415 693 2000
Facsimile:    +1 415 693 2222
Attorneys for Defendant
LINKEDIN CORPORATION

COOLEY LLP
JORGE L. SARMIENTO (Admitted *Pro Hac Vice*)
(jsarmiento@cooley.com)
55 Hudson Yards
New York, NY 10001-2157
Telephone:    +1 212 479 6000
Facsimile:    +1 212 479 6275

9

10

11

12

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

13

14

15

16

17

18

19

| | |
|---|---|
| V.R. individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LINKEDIN CORPORATION,<br><br>Defendant. | Case No. 5:24-CV-07399-EJD<br><br>**DEFENDANT LINKEDIN CORPORATION'S REPLY BRIEF**<br><br>Date:     June 5, 2025<br>Time:    9:00 a.m.<br>Dept:    Courtroom 4, 5th Floor<br>Judge:    Edward J. Davila<br>Trial Date:  TBD<br>Date Action Filed:  October 23, 2024 |

20

21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ............................................................................................................II

II.  ARGUMENT .................................................................................................................. 1

    A.   Plaintiff's Claims All Fail because LinkedIn Obtained Her Consent to the
        Very Conduct She Challenges. ................................................................................ 1

    B.   None of Plaintiff's Arguments Save Her CIPA Claims from Dismissal. ............... 3

        1.   Choice-of-Law Issues are Ripe and Mandate Dismissal............................ 3

        2.   Plaintiff's Reply Confirms That LinkedIn Was a Vendor That Is
            Exempt from Liability under CIPA's Party Exception. ............................. 4

        3.   Plaintiff's CIPA Clause 2 Claim Fails for Independent Reasons. .............. 7

        4.   Plaintiff's CIPA's Clause 3 Claim Is Also Doomed. ................................. 8

        5.   Plaintiff Does Not Plead a Viable Section 632 Claim. .............................. 8

    C.   The Crime-Tort Exception Does Not Save Plaintiff's Wiretap Act Claim........... 11

    D.   Plaintiff Fails to State a Claim for Constitutional Invasion of Privacy................. 12

        1.   Plaintiff Alleges No Protected Privacy Interest. ...................................... 12

        2.   Plaintiff Alleged No Reasonable Expectation of Privacy Here. ............... 13

        3.   Plaintiff's Lack of Allegations Supporting a "Highly Offensive"
            Invasion Independently Merits Dismissal................................................. 14

III. CONCLUSION .............................................................................................................. 15

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Allen v. Dollar Tree Stores, Inc.*,
5
  475 F. App'x 159 (9th Cir. 2012) ........................................................................... 13

6

*In re Apple Inc. Device Performance Litig.*
7
  386 F. Supp. 3d 1155 (N.D. Cal. 2019) ............................................................... 4, 9

8

*Byars v. Hot Topic, Inc.*,
  656 F. Supp. 3d 1051 (C.D. Cal. 2023)..................................................................... 6

9

*Calhoun v. Google LLC*,
10
  526 F. Supp. 3d 605 (N.D. Cal. 2021) ...................................................................... 2

11

*Cody v. Ring LLC*,
  718 F. Supp. 3d 993 (N.D. Cal. 2024) ...................................................................... 5

12

*Dep't of Fair Employment & Housing v. Superior Court*,
13
  99 Cal. App. 4th, 896 904 (2002) .......................................................................... 12

14

*Doe v. Google LLC*,
15
  2024 WL 3490744 (N.D. Cal. July 22, 2024)................................................... 6, 7, 8

16

*Doe v. Kaiser Foundation Plan, Inc.*,
  2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) .............................................. 2, 3, 4, 6

17

*Doe v. Meta Platforms, Inc.*,
18
  690 F. Supp. 3d 1064 (N.D. Cal. 2023) ........................................................... *passim*

19

*Doe v. Meta Platforms*,
20
  No. 22-CV-03580-WHO, Dkt. No. 185 .................................................................... 9

21

*In re Facebook Internet Tracking Litigation*,
  956 F.3d 589 (9th Cir. 2020)............................................................................. 13, 14

22

*Frezza v. Google Inc.*,
23
  2013 WL 1736788 (N.D. Cal. Apr. 22, 2013) .......................................................... 3

24

*In re Google Assistant Priv. Litig.*,
  457 F. Supp. 3d 797 (N.D. Cal. 2020) ...................................................................... 9

25

*In re Google Cookie Placement Consumer Priv. Litig.*,
26
  806 F.3d 125 (3d Cir. 2015)..................................................................................... 11

27

*In re Google Inc.*,
28
  2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ................................................... 2, 10

*In re Google Location Hist. Litig.*,
    428 F. Supp. 3d 185 (N.D. Cal. 2019) .......................................................................... 9, 10, 14

*In re Google Location Hist. Litig.*,
    514 F. Supp. 3d 1147 (N.D. Cal. 2021) ................................................................................. 14

*Greenley v. Kochava, Inc.*,
    684 F. Supp. 3d 1024 (S.D. Cal. 2023) ................................................................................. 10

*Gutierrez v. Select Portfolio Servicing Inc.*,
    2015 WL 13917190 (C.D. Cal. June 17, 2015) ..................................................................... 12

*Hammerling v. Google*,
    2024 WL 937247 (9th Cir. Mar. 5, 2024) ........................................................................... 1, 2

*In re Hard Drive Suspension Assemblies Antitrust Litig.*,
    2020 WL 5074041 (N.D. Cal. Aug. 26, 2020) ......................................................................... 9

*Heerde v. Learfield Commc'ns, LLC*,
    2024 WL 3573874 (C.D. Cal. July 19, 2024) .......................................................................... 7

*Henry v. Napa Valley Unified*,
    2016 WL 7157670 (N.D. Cal. Dec. 8, 2016) .......................................................................... 13

*Herbalife Int'l of Am. v. Ford*,
    2009 WL 10715605 (C.D. Cal. Mar. 6, 2009) ........................................................................ 12

*Holmes High Rustler, LLC v. Gomez*,
    2015 WL 4999737 (N.D. Cal. Aug. 21, 2015) ......................................................................... 5

*Ibarra v. City of Carson*,
    214 Cal. App. 3d 90 (1989) ..................................................................................................... 10

*Jackson v. LinkedIn Corp.*,
    Case No. 5:24-cv-00812, ECF No.1 (N.D. Cal. Feb. 9, 2024) ............................................ 6, 8

*Jones v. Regents of Univ. of Cal.*,
    2022 WL 1137089 (N.D. Cal. Apr. 18, 2022) ............................................................. 7, 12, 13

*Lieberman v. KCOP Television, Inc.*,
    110 Cal. App. 4th 156 (2003) ................................................................................................... 10

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) ...................................................................................................... 3

*McCoy v. Alphabet*,
    2021 WL 405816 (N.D. Cal. Feb. 2, 2021) ............................................................................... 2

*In re Meta Pixel Healthcare Litig.*,
    647 F. Supp. 3d at 801 ............................................................................................................. 14

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Nienaber v. Overlake Hosp. Med. Ctr.*,
    733 F. Supp. 3d 1072 (W.D. Wash. 2024)................................................................. 11

*Oddo v. United Technologies Corp.*,
    2022 WL 577663 (C.D. Cal. Jan. 3, 2022) ........................................................... 14, 15

*Ojeda v. Kaiser Permanente Int'l, Inc.*,
    2022 WL 18228249 (C.D. Cal. Nov. 29, 2022)......................................................... 14

*Okash v. Essentia Health*,
    2024 WL 1285779 (D. Minn. Mar. 26, 2024) ........................................................... 11

*Pena v. GameStop, Inc.*,
    670 F. Supp. 3d 1112 (S.D. Cal. 2023) ..................................................................... 11

*People v. Superior Court*,
    70 Cal. 2d 123 (1969) ................................................................................................ 9

*Planned Parenthood Fed'n of Am., Inc. v. Newman*,
    51 F.4th 1125 (9th Cir. 2020)................................................................................... 11

*Rodriguez v. Ford Motor Co.*,
    722 F. Supp. 3d 1104 (S.D. Cal. 2024) ..................................................................... 4

*Rojas v. HSBC Card Servs. Inc.*,
    20 Cal. App. 5th 427 (2018)....................................................................................... 9

*Shah v. Fandom, Inc.*,
    2024 WL 4539577 (N.D. Cal. Oct. 21, 2024) ......................................................... 10

*Smith v. Facebook, Inc.*,
    745 F. App'x 8 (9th Cir. 2018) .......................................................................... 1, 2, 7

*Smith v. Google*,
    No. 23-cv-3527-PCP, ECF No. 35 ............................................................................ 6

*Turner v. Nuance Comm'ns, Inc.*,
    735 F. Supp. 3d 1169 (N.D. Cal. 2024) ..................................................................... 2

*Turner v. Nuance Commc'ns, Inc.*,
    2024 WL 2750017 (N.D. Cal. May 28, 2024) ........................................................... 7

*Valentine v. NebuAd*,
    804 F. Supp. 2d. 1022 (N.D. Cal. 2011) ................................................................... 3

*Valenzuela v. Super Bright LEDs Inc.*,
    2023 WL 8424472 (C.D. Cal. Nov. 27, 2023)........................................................ 5, 8

*In re Vizio, Inc. Consumer Privacy Litig.*,
    238 F. Supp. 3d 1204 (C.D. Cal. 2017)................................................................... 15

*Williams v. What If Holdings, LLC*,
   2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) ........................................................... 4

*In re Yahoo Mail Litig.*,
   308 F.R.D. 577 (N.D. Cal. 2015) .............................................................................. 3

**Statutes**

18 U.S.C. §§ 2511 ......................................................................................................... 9, 11

Cal. Penal Code
   § 631 ........................................................................................................................ 18
   § 632 .................................................................................................................. *passim*

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## I.    INTRODUCTION

Plaintiff's First Amended Complaint ("FAC") cannot go forward. First, all of Plaintiff's claims must be dismissed because she consented to the challenged conduct. Second, Plaintiff's CIPA claims fail for many other reasons. Her complaint pleads no plausible nexus to California, so she cannot invoke California's wiretapping law. Under Section 631 of CIPA, she fails to plead that LinkedIn acted as anything more than CityMD's service provider and has not pled a "willful" interception of a communication "in transit." Plaintiff's Section 632 claim fails because she does not adequately plead intent, that software is a device, or that any of the alleged communications were confidential. As to the constitutional invasion of privacy claim, Plaintiff's Opposition only underscores her failure to allege a protected privacy interest, a reasonable expectation of privacy, or any "highly offensive" intrusion. The Opposition does not adequately address these flaws and instead rests on mischaracterizations of the law and Plaintiff's own allegations. As Plaintiff has already amended the Complaint, the Court should now dismiss with prejudice.

## II.    ARGUMENT

### A.    Plaintiff's Claims All Fail because LinkedIn Obtained Her Consent to the Very Conduct She Challenges.

LinkedIn's motion to dismiss ("Motion") explains how LinkedIn's Privacy Policy, Cookie Policy, and Cookie Table disclose and obtain consent for precisely the conduct challenged here— collection of information about a user's "visits and interaction" with third-party websites. (Mot. at 6-7.) Plaintiff's Opposition does not refute that she agreed to these policies and ignores Ninth Circuit case law establishing that these disclosures doom her claims. *See Hammerling v. Google*, 2024 WL 937247, at *3 (9th Cir. Mar. 5, 2024); *Smith v. Facebook, Inc.*, 745 F. App'x 8, 9 (9th Cir. 2018).  Instead, Plaintiff cites five readily distinguishable cases. None involve nearly the level of parity between disclosures and conduct present here and, indeed, several are just irrelevant.

*Fan v. NBA Properties Inc.*, (Opp. at 4) addresses a different statute with a heightened consent regime. 2024 WL 1297643, at *2 (N.D. Cal. Mar. 26, 2024) (Video Privacy Protection Act's stringent requirement of "distinct and separate" consent not shown). *Hilfiker Square, LLC v. Thrifty Payless, Inc.*, (Opp. at 4), is a breach of contract and land use case discussing a qualitatively

different inquiry—whether consent was reasonably withheld. *Hilfiker*, 2016 WL 7031283, at *3 (D. Or. Nov. 29, 2016). *Doe v. Meta Platforms, Inc.*, (Opp. at 5) discusses **advertisers', not users', consent**. 690 F. Supp. 3d 1064, 1078 (N.D. Cal. 2023). The vague, general policy Facebook cited in *Campbell v. Facebook*, (Opp. at 6), made **no** reference to the challenged conduct. 77 F. Supp. 3d 836, 846-47 (N.D. Cal. 2014) (disclosure that Facebook "use[s] the information we receive about you in connection with the services and features we provide" did not disclose Facebook's scraping private direct messages). *McCoy* and *Turner*, (Opp. at 4-5), likewise discuss disclosures that did not cover the challenged practice. *McCoy v. Alphabet*, 2021 WL 405816, at *6 (N.D. Cal. Feb. 2, 2021) ("'[A]ctivity on third-party sites and apps **that use our services**' may not be understood . . . to include data from apps that are not associated with Defendant's services.") (emphasis added); *Turner v. Nuance Comm'ns, Inc.*, 735 F. Supp. 3d 1169, 1180 (N.D. Cal. 2024) (defendant's representations that "[**w**]*e* may record . . . conversations" did not clearly disclose recordation by third parties) (emphasis added). None of these authorities are applicable or even persuasive here.

Plaintiff attempts to shoehorn this case into a group of cases involving allegedly contradictory disclosures that did not expressly authorize the challenged conduct. (Opp. at 5-6 (citing *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 620-21 (N.D. Cal. 2021) (defendant's Privacy Policies suggested it would ***not*** engage in the challenged conduct and were not incorporated into the contract); *In re Google Inc.*, 2013 WL 5423918, at *13 (N.D. Cal. Sept. 26, 2013) (similar)). But her attempt to explain how LinkedIn's policies are contrary to its practices (Opp. at 5), is so convoluted as to be mostly unintelligible. Plaintiff apparently asks the Court to simply presume LinkedIn's conduct was unlawful, despite Plaintiff bearing the burden to plausibly plead that. This circular argument deserves no weight, as it ignores that, in LinkedIn's Privacy Policy, **consent is an enumerated lawful basis** for this collection. (Reddy Decl. Ex. D.) Plaintiff's claim that LinkedIn's argument would "render this disclosure meaningless" is also unavailing. The disclosure still precludes any unlawful conduct, but where the challenged data collection falls squarely within the disclosures in LinkedIn's privacy policy that Plaintiff accepts, her consent negates any purported unlawfulness. *See Smith*, 745 F. App'x at 9; *Hammerling*, 2024 WL 937247, at *3.

Finally, the *Doe v. Kaiser* dismissal order, (Opp. at 6), is specific to the facts of that case

and does not suggest that consent cannot be resolved on a motion to dismiss. 2024 WL 1589982, at *6 (N.D. Cal. Apr. 11, 2014) (noting that dismissal on the pleadings based on an affirmative defense is appropriate wherever it appears on the face of the complaint.) Because documents incorporated by reference into Plaintiff's Complaint demonstrate consent, dismissal is appropriate.[1]

### B.    None of Plaintiff's Arguments Save Her CIPA Claims from Dismissal.

#### 1.    Choice-of-Law Issues are Ripe and Mandate Dismissal.

First, Plaintiff misconstrues LinkedIn's choice-of-law argument as premised on a "*per se* extraterritoriality bar.*" (Opp. at 6). Not so; LinkedIn argued, and Plaintiff fails to refute, that she has not pled "the requisite ties to California." (Mot. at 8.) The standing-related discussion in *Valentine* is not to the contrary; that case "[does] not address whether CIPA should apply to a nationwide class where there are material conflicts of law and the intercepted communications may never pass through California." *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 605 n.13 (N.D. Cal. 2015) (citing *Valentine v. NebuAd*, 804 F. Supp. 2d. 1022, 1027-28 (N.D. Cal. 2011)). And while Plaintiff states that LinkedIn "very likely routed and analyzed [the challenged] communications within California," (Opp. at 7), she may not rely on facts never pled.

Plaintiff also does not meaningfully refute LinkedIn's argument that binding Ninth Circuit law establishes her failure to plead "significant" California contacts, (Mot. at 7-8 (citing *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012)). Instead, she argues that choice-of-law considerations are premature at the pleading stage. But none of her cases support this sweeping conclusion, as "the principle articulated in *Mazza* applies . . . even [on] a motion to dismiss." *Frezza v. Google Inc.*, 2013 WL 1736788, at *6 (N.D. Cal. Apr. 22, 2013). Plaintiff ignores *Doe v. Kaiser* (Mot. at 9), and instead invokes *Doe v. Meta Platforms, Inc.*, which states only that the issue is "**arguably** premature" and addressed a narrower question whether a nonresident Plaintiff can **ever** invoke CIPA. 690 F. Supp. 3d 1064, 1078-79 (N.D. Cal. 2023); 3:22-cv-3580-WHO, ECF No. 232, at 10 (N.D. Cal. May 8, 2023). None of Plaintiff's remaining authorities address wiretapping law and each is distinguishable for other reasons. (*See* Mot. at 8.) In *Bias v. Wells Fargo & Co.*, the

---

[1] Plaintiff waived any objection to these documents by failing to oppose LinkedIn's RJN.

1    Court deferred choice-of-law questions due to difficulty in determining whether there were "crucial

2    differences" between the UCL and Louisiana law where Plaintiffs' claims *arose* from a contract

3    selecting California law and Louisiana was the site of their alleged injury. 942 F. Supp. 2d 915,

4    927 (N.D. Cal. 2013). No such facts connecting Plaintiffs' claims to California are pled here,[2] and

5    in any event, such questions are easily answered in the affirmative when comparing substantive

6    differences implicated by one- versus two-party consent regimes. *Contra In re Apple Inc. Device*

7    *Performance Litig.* 386 F. Supp. 3d 1155, 1170 (N.D. Cal. 2019) (reliance on six expert declarations

8    on foreign law would "convert[] the motion . . . into a motion for summary judgment.").

9         **2.      Plaintiff's Reply Confirms That LinkedIn Was a Vendor That Is**
10               **Exempt from Liability under CIPA's Party Exception.**

11        ***First***, Plaintiff's argument that whether LinkedIn was a vendor is "a question of fact"

12    unsuitable for resolution here, (Opp. at 7), relies on three out-of-district, fact-specific decisions and

13    the "technical context" of different technologies. (Opp. at 7-8.) Plaintiff asks the Court to ignore

14    over a dozen cases, most within this district, dismissing on this issue. (Mot. at 6-9.) As recognized

15    in this district, the party exception becomes a question of fact only where the plaintiff's allegations

16    show that the software at issue "extend[ed] beyond the ordinary function of a tape recorder," which

17    Plaintiff has not done. *Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *4 (N.D. Cal.

18    Dec. 22, 2022); *Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104, 1121 (S.D. Cal. 2024)

19    (considering authorities cited by Plaintiff and rejecting argument that party exception is a question

20    of fact). The Court should decline Plaintiff's invitation to follow these outlier cases.[3]

21        ***Second***, Plaintiff seeks to avoid dismissal by misstating her allegations. Plaintiff does not

22

23    ────────────────

24    [2] Further, Plaintiff fails to address *Kaiser*'s conclusion that contractual choice-of-law provisions

25    cannot expand a state law's express limitations on geographical scope (Mot. at 9 (citing *Doe v.*

26    *Kaiser Foundation Plan, Inc*., 2024 WL 1589982, at *13 (N.D. Cal. Apr. 11, 2024) (applying this

27    analysis and dismissing CIPA claim brought by out-of-state plaintiff))).

28    [3] Plaintiff also confusingly claims she can avoid the vendor exception based on his allegation that
      she never "consented" to the alleged interception. (Opp. at 8.) This argument is irrelevant.

refute that she pleads CityMD's control over the Insight Tag (Mot. at 10-11; FAC ¶¶ 16, 19, 22), arguing instead that she pleads that "Defendant uses [Insight Tag] data . . . to group users into audience groups, which it then sells to advertisers by displaying their ads[.]" (Opp. at 8.) She pleads nothing of the sort; the only supportive allegation that the Opposition cites is irrelevant. (Opp. at 8 (citing FAC ¶ 42 (stating that LinkedIn "intercepted consumers confidential information related to their medical appointments").) Plaintiff's allegation that LinkedIn's "marketing solutions allow advertisers to select specific characteristics to help them reach their ideal audience," (FAC ¶ 18), says nothing about how LinkedIn "used" any data from CityMD's website. In any case, merely sorting data to "allow advertisers" to use it for their own purposes falls squarely within the scope of the vendor exception. (Mot. at 6 (collecting cases)).

Plaintiff concedes that LinkedIn uses Insight Tag data to "fuel various services offered" to third parties (Opp. at 8 (citing FAC ¶ 20)), and her remaining allegations are silent on LinkedIn's own use of any data. (Opp. at 10 (citing FAC ¶¶ 20, 24, 41 (providing a general overview of LinkedIn's services and the Insight Tag). Plaintiff's bare allegations that LinkedIn "is able to target its account holders for advertising" or utilized class members' information "for its own purposes, including for targeted advertising," (FAC ¶¶ 30, 122), fail to plausibly suggest that LinkedIn actually does so. *Valenzuela v. Super Bright LEDs Inc.*, 2023 WL 8424472, at *8 (C.D. Cal. Nov. 27, 2023); *Holmes High Rustler, LLC v. Gomez*, 2015 WL 4999737, at *4 (N.D. Cal. Aug. 21, 2015) (refusing to "consider facts alleged for the first time in opposition to a motion to dismiss."); (Mot. at 6-7). To the extent Plaintiff argues LinkedIn is liable as a party because it is capable of using Insight Tag data for an independent purpose, Plaintiff's allegations are nothing like those courts have found sufficient under *Javier*. (Mot. at 9 (collecting authorities)); *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1003 (N.D. Cal. 2024) (dismissing claim where plaintiff's "conclusory allegations fail to state sufficient factual allegations to support an inference that Kustomer is capable of using the intercepted information for another purpose").

**Third**, Plaintiff's claims fail for the independent reason that no allegations are tethered to **CityMD**. Plaintiff's claims that her general descriptions of Insight Tag technology and allegations that she scheduled appointments on CityMD webpages deploying the Insight Tag are sufficient,

(Opp. at 9, 11), are in fact a red herring; nowhere does she meaningfully describe how LinkedIn purportedly used **her** data or **any data from CityMD's website**. (*See e.g.,* Mot. at 10-11.) Plaintiff attempts to distinguish *Doe*, which dismissed claims based on healthcare websites' use of Google Analytics, as irrelevant because she alleges that the Insight Tag is embedded on CityMD's website. (Opp. at 11.) But the *Doe* Court observed that the complaint "relie[d] heavily on Google's own product descriptions" and lacked allegations as to "actual[] us[e]." *Doe v. Google LLC*, 2024 WL 3490744, at *3 (N.D. Cal. July 22, 2024). Here too, Plaintiff does not describe how CityMD used the Insight Tag or plead that she saw any advertising based on her Insight Tag data.[4]

**Fourth**, instead of rebutting LinkedIn's arguments, Plaintiff extensively summarizes two decisions by Judge Pitts, neither dispositive. She does not meaningfully address LinkedIn's arguments as to why the *Jackson* order does not support dismissal. (Mot. at 10; Opp. at 8-9; *compare Jackson v. LinkedIn Corp.*, Case No. 5:24-cv-00812, ECF No.1 at ¶¶ 20-26 (N.D. Cal. Feb. 9, 2024), *with* FAC ¶¶ 17-21 (reflecting nearly identical allegations).) Her concession that she plagiarized the *Jackson* complaint reinforces that her allegations are conclusory: Where a plaintiff "pleads at such a high level of generality that it is possible to copy and paste a complaint word-for-word," she "by definition" pleads without the requisite factual specificity. *Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051, 1060-61 (C.D. Cal. 2023). Further, *Smith v. Google, LLC* only underscores the paucity of Plaintiff's allegations here. In *Smith v. Google LLC*, Judge Pitts denied dismissal based on more specific allegations regarding use—including that Google allegedly intercepted data from tax websites to "power its algorithms" and compiled "a detailed dossier, or digital fingerprint . . . . for the benefit of Google[.]" 735 F. Supp. 3d 1188, 1197 (N.D. Cal. 2024); *Smith v. Google*,

---

[4] Plaintiff argues that another Court in this district reached an "alternative conclusion" to *Doe v. Google*, "undermining its viability." (Opp. at 11.) But the case she cites was decided ***before*** *Doe v. Google*, and expressly distinguished by the *Doe v. Google LLC* Court. 2024 WL 3490744, at *5; *supra* Section II.A.2 (discussing *Doe v. Meta*).)

No. 23-cv-3527-PCP, ECF No. 35 ¶ 29 (N.D. Cal. Oct. 9, 2023). No such allegations are pled here.[5]

### 3. Plaintiff's CIPA Clause 2 Claim Fails for Independent Reasons.[6]

*Read or Attempt to Learn Contents.* Plaintiff never argues that LinkedIn read or attempted to learn the contents of her communications, waiving this issue entirely. *Jones v. Regents of Univ. of Cal.*, 2022 WL 1137089, at *2 (N.D. Cal. Apr. 18, 2022) (unaddressed arguments waived).

*Willful*. To avoid dismissal, Plaintiff points to her conclusory allegations that "LinkedIn intentionally intercept[s]" "sensitive" and "confidential" data and "knew" that it intercepted each of a user's interactions on unspecified "Websites," (Opp. at 12 (citing FAC ¶¶ 4, 9, 36), which do not suffice. Judicially noticeable documents show that LinkedIn specifically instructed Insight Tag users not to send it personally identifiable information. *Doe*, 2024 WL 3490744, at *4 (dismissing CIPA claims on this basis). Stated simply: "There is nothing inherently unlawful about [LinkedIn] offering its source code" to CityMD—"at least [given LinkedIn's] admonitions" to CityMD that it "must avoid transmitting" health, medical, or other sensitive data. *Id.* at *4.

Plaintiff points to *Smith* and *Doe v. Meta Platforms, Inc*., 690 F. Supp. 3d 1064 (N.D. Cal. 2023), to suggest that intent is a factual question. (Opp. at 11-12.) LinkedIn respectfully submits that Judge Chhabria's reasoning was correct: "If a plaintiff alleges that the clients of a source code provider use the code contrary to the provider's instructions, the plaintiff should not be able to get

---

[5] Plaintiff's other authorities are distinguishable, as each alleges more specific facts. (Opp. at 10 (citing *Gladstone v. Amazon Web Servs*., Inc., 2024 WL 3276490, at *6 (W.D. Wash. July 2, 2024) (defendant's service terms explicitly disclosed independent use of data to improve its own services); *Turner v. Nuance Commc'ns, Inc*., 2024 WL 2750017, at *10 (N.D. Cal. May 28, 2024) (defendant developed "AI Risk Engine" used to analyze customer voices and input recorded voice prints into its own "massive database" used to recognize voices); *Heerde v. Learfield Commc'ns, LLC*, 2024 WL 3573874, at *7 n.6 (C.D. Cal. July 19, 2024) (plaintiffs specifically alleged how defendants "share [plaintiffs] communications with third parties for profit.")))

[6] Notwithstanding allegations that LinkedIn "intentionally tapped or made unauthorized connections," Plaintiff withdraws her claims under clause 1 of CIPA. (FAC ¶ 108; Opp. at 11, n.2.)

around the intent requirement by simply intoning that the source code provider intended for the clients not to follow instructions." *Doe*, 2024 WL 3490744, at *5. Here too, "[P]laintiff[] offer[s] no support for [her] assertions that [LinkedIn's] instructions are just a ruse to mask the company's true objective." *Id.* at 4. Her allegations of intent are even more paltry than those the *Meta* court found deficient. There, unlike here, the complaint directly and explicitly alleged that Google had the capability to identify and cull information from healthcare websites and consciously chose not to because it wanted to receive such information, displaying intent to obtain sensitive health information by failing to properly utilize such tools. *Id.* at *4 (describing the complaint).

*In Transit within California*. Plaintiff's Opposition only confirms that she fails to plead (1) interception "in transit" (2) "in California." Plaintiff again misleadingly describes her FAC as alleging these elements, (Opp. at 13), but **none of her allegations describe the timing or location** of the alleged interception. And nowhere in her FAC is any suggestion that "the . . . Insight Tag duplicated the communications with the Website and sent the same to LinkedIn." (*Id.*). Plaintiff's authorities do not help. The *Jackson* order did not address the "in transit" requirement, while *Valenzuela* included far more detailed allegations, explicitly referencing "real time interception," "detail on how it occurs," and "statements . . . regarding 'real-time insights' and [how] data from every use event [is] '**collected as it happens**.'" 686 F. Supp. 3d at 978, n. 6 (emphasis added).

### 4.  Plaintiff's CIPA's Clause 3 Claim Is Also Doomed.

Plaintiff does not contest, thus conceding, that her clause 3 claim fails absent a viable clause 2 claim. As argued, Plaintiff does not plausibly allege LinkedIn's use of **her** data—or any data from CityMD—for any advertising or marketing purposes; her clause 3 claim fails for this same reason.

### 5.  Plaintiff Does Not Plead a Viable Section 632 Claim.

Plaintiff's Opposition does not persuasively rebut LinkedIn's arguments that her Section 632 claim fails because (1) Plaintiff has not plausibly alleged LinkedIn intentionally recorded a confidential communication and (2) software is not a device.

*Intent*. Plaintiff regurgitates the same allegations cited above, arguing that LinkedIn's "permit[ting] CityMD to install the Insight Tag," **(**Opp. at 15), supports its intentional recordation. This is not plausible. Plaintiff's own pleading and documents properly before the Court establish

(1) that CityMD, not LinkedIn, controls its installation of the Insight Tag; and (2) that LinkedIn expressly cautioned advertisers ***not*** to transmit sensitive information. Plaintiff cites no authority for her novel theory that not "rectify[ing]" another party's bad acts shows its "***purpose or desire*** of recording a confidential conversation, or with the ***knowledge to a substantial certainty*** that her use of the equipment will result in the recordation of a confidential conversation." *People v. Superior Court*, 70 Cal. 2d 123, 134 (1969) (emphases added). Indeed, Plaintiff's Opposition implicitly concedes that LinkedIn did not purposely receive confidential information by asserting the Insight Tag "recorded . . . ***indiscriminately***." (Opp. at 16 (emphasis added).) Plaintiff's cited authorities only underscore that she must allege—as she fails to—detailed facts showing an affirmative step to intentionally receive confidential information. *See Rojas v. HSBC Card Servs. Inc.*, 20 Cal. App. 5th 427, 430 (2018) (employer intentionally recorded employee calls directly and issued a policy describing that it may do so); *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 810, 816 (N.D. Cal. 2020) (Google allegedly directly recorded plaintiffs' communications, had a means of identifying communications that were improperly obtained, and chose to continue to use them for advertising and other purposes "even after they bec[ame] aware of their provenance."); *Doe v. Meta Platforms*, No. 22-CV-03580-WHO, Dkt. No. 185 ¶ 124 (N.D. Cal. Feb. 21, 2023) (alleging Google had a marketing division dedicated to getting health providers to use Meta's Pixel and "urge[d] health care providers and other covered entities to use the Pixel and other Meta tools to target ads to patients"). Plaintiff's only other rebuttal is to baldly state that LinkedIn "willingly incorporated the information into its algorithms and used it for the purpose of augmenting its advertising machinery . . . [and] as a means for targeting them for advertising." (Opp. at 16.) Again, the Court should not credit unpled assertions raised only in Plaintiff's Opposition. *In re Hard Drive Suspension Assemblies Antitrust Litig.*, 2020 WL 5074041, at *2 (N.D. Cal. Aug. 26, 2020).

**Device**. Plaintiff's sole rejoinder to LinkedIn's argument that software is not a device is to cite *Libman v. Apple*, denying dismissal of a Section 632 claim. Plaintiff offers no response to LinkedIn's argument that the authorities on which *Libman* relies are not dispositive; those authorities invoked the specific definition of "device" in the Wiretap Act, inapplicable to CIPA. (Mot. at 16.) This Court has previously observed that "[s]oftware . . . are not 'devices' within the

meaning of CIPA because they are not 'equipment.'" *In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 193 (N.D. Cal. 2019) (citation omitted). Plaintiff neither rebuts this nor meaningfully distinguishes LinkedIn's cases establishing that "device" refers to a physical object, not software, (Mot. at 16-17.), a common-sense conclusion supported by courts' mandate to "interpret terms consistent with the statutory scheme of which it is a part."[7] *Ibarra v. City of Carson*, 214 Cal. App. 3d 90, 96 (1989). For example, in enacting Section 638.51 of CIPA, the legislature explicitly distinguished between a "process" and "device." *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023) (finding software fits under "process" rather than "device" prong of CIPA § 638.51); *Shah v. Fandom, Inc.*, 2024 WL 4539577, at *2 (N.D. Cal. Oct. 21, 2024) (holding same)). For this reason as well, Plaintiff's Section 632 claim must be dismissed.

*Confidential communications*. Refusing to meaningfully engage with LinkedIn's cited authorities holding that online communications are presumptively not "confidential," Plaintiff instead invokes a contrary outlier holding in *Brown v. Google*. (Opp. at 17); *Greenley*, 684 F. Supp. 3d at 1052-53 (describing *Brown* as "[o]ne court" that "has pushed back on this presumption" which "California courts have generally applied"). Plaintiff offers *no* reason why she had an "objectively reasonable" expectation of privacy based on the facts pled. Instead, she argues first that the issue "*often* presents factual issues not appropriately resolved at the pleading stage," (Opp. at 17), citing *Brown*'s inapposite summary judgment ruling finding expectations of privacy a triable issue of fact where users were advised, "Now you can browse privately." *Brown*, 685 F. Supp. 3d at 921, 939. This has no bearing on the propriety of dismissal based on facts alleged in *this case*, nor does Plaintiff's citation to a case concerning secret tape recordings by an undercover journalist posing as a medical patient. (Opp. at 17 (citing *Lieberman v. KCOP Television, Inc.*, 110 Cal. App. 4th

---

[7] Plaintiff baldly asserts that *In re Google Location History* is "unpersuasive" because that case did not involve pixels. (Opp. at 17.) This flimsy distinction is meaningless, as Plaintiff does not contest that both *In re Google* and this case implicate software. (FAC ¶ 7 (referring to the Insight Tag as "software")); *In re Google Location Hist. Litig.*, 428 F. Supp. 3d at 193 ("The Court agrees with Defendant's contention that 'Plaintiffs' allegations are centrally focused on Google's software.'").

1    156, 169 (2003)). Plaintiff's only other argument that "Defendant has failed to produce any

2    evidence" that Plaintiff was aware that her communications were being recorded, (*id.*), misstates

3    the burden *she* bears at the pleading stage to plausibly allege facts sufficient to support her claims.

**C.    The Crime-Tort Exception Does Not Save Plaintiff's Wiretap Act Claim.**

5    Plaintiff's assertion that the Wiretap Act's crime-tort exception protects her claim rests on

6    a bald assertion that this exception applies and a string cite of distinguishable cases with no

7    accompanying analysis. She does not, and cannot, point to any allegation plausibly suggesting that

8    LinkedIn intercepted her communications with the "purpose of committing [a] tortious or criminal

9    act" (Opp. at 18), which is a prerequisite to this exception applying. On the contrary, that LinkedIn

10    requires advertisers to agree that they will not transmit medical or other sensitive information

11    demonstrates that it never intended to receive the challenged information, entailing in turn that it

12    cannot have received it with any purpose at all, let alone a tortious or criminal one.

13    Moreover, even assuming *arguendo* that LinkedIn intercepted Plaintiff's communications

14    in order to violate HIPAA, the Wiretap Act's crime-tort exception concerns communications

15    recorded "for the purpose of facilitating some *further* impropriety, such as blackmail." *Planned*

16    *Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1135 (9th Cir. 2020) (emphasis added);

17    *see In re Google Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 145 (3d Cir. 2015) ("[T]he

18    criminal or tortious acts contemplated by § 2511(2)(d) are acts *secondary to* the acquisition of the

19    communication involving [misuse] of the interception's fruits.]"). Where the act of interception is

20    identical with the alleged HIPAA violation, the crime-tort exception does not apply. *See, e.g.*,

21    *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1095-96 (W.D. Wash. 2024) (crime-

22    tort exception did not apply notwithstanding alleged HIPAA violations because "Plaintiff fails to

23    plead a tortious or criminal use of the acquired communications, separate from the recording,

24    interception, or transmission"); *Okash v. Essentia Health*, 2024 WL 1285779, *4 (D. Minn. Mar.

25    26, 2024) (same); *see also Pena v. GameStop, Inc.*, 670 F. Supp. 3d 1112, 1120 (S.D. Cal. 2023)

26    (allegations of far more bifurcated interception of chats and sale of transcripts still insufficient to

27    show "independently illegal or actionable conduct such that the party exception is inapplicable").

28    Thus, because the party exception applies, Plaintiff's federal Wiretap Act claim cannot proceed.

**D.      Plaintiff Fails to State a Claim for Constitutional Invasion of Privacy.**

**1.      Plaintiff Alleges No Protected Privacy Interest.**

Plaintiff's argument that HIPAA supports that "confidential prescription information" is "medical information" sufficient to support her protected privacy interest is carelessly copy-pasted from her counsel's briefing in one of its copycat cases against LinkedIn, as evidenced by the argument's references to *ReflexMD*, a website not at issue here. (Opp. at 20.) Moreover, ***this case does not involve prescription information at all***. Having cited facts from the wrong case, Plaintiff offers ***no*** support for her assertion that the logistical information relevant here is "medical information," and ***no*** remotely responsive argument to LinkedIn's arguments that it is neither sensitive nor private. (Mot. at 20-21.) And Plaintiff's feeble attempt to rebut LinkedIn's argument that she failed to allege that LinkedIn connects isolated information from separate transmissions to infer a narrative merely reconfirms the separate nature of the transmissions and baldly states that "LinkedIn was aware that Plaintiff was booking a medical appointment," because it "can easily and reasonable infer the meaning of the . . . button clicks." (Opp. at 21.) These statements have no basis in Plaintiff's complaint and are not entitled to a presumption of truth.

Plaintiff likewise ignores LinkedIn's argument that she fails to allege ***improper use*** of her information, and hence fails to plausibly allege infringement of her informational privacy interests. LinkedIn argued that because informational privacy involves regulation of "the unnecessary collection ***and improper use of such information for dissemination***," Plaintiff must plausibly allege that LinkedIn "seeks to disseminate or misuse the information requested." (Mot. at 19 (citing *Dep't of Fair Employment & Housing v. Superior Court*, 99 Cal. App. 4th, 896 904 (2002)); *Gutierrez v. Select Portfolio Servicing Inc.*, 2015 WL 13917190, at *3 (C.D. Cal. June 17, 2015); *Herbalife Int'l of Am. v. Ford*, 2009 WL 10715605, at *5 (C.D. Cal. Mar. 6, 2009). By failing to address this argument, Plaintiff concedes the point. Thus, she did not sufficiently allege that LinkedIn misused any of her personal information or did more than provide a tool allowing ***CityMD*** to make use of the information that Plaintiff voluntarily shared with CityMD. (Mot. at 10-11); *Jones v. Regents of Univ. of Cal.*, 2022 WL 1137089, at *2 (N.D. Cal. Apr. 18, 2022), *appeal dismissed*, 2023 WL 7480118 (9th Cir. June 6, 2023) (arguments not raised in opposition are waived).

Similarly, Plaintiff waives any argument that she has adequately alleged an autonomy privacy interest because she does not address LinkedIn's argument to the contrary. (Mot. at 19-20; Opp. at 16-17 (failing to respond to LinkedIn's argument)); *Jones*, 2022 WL 1137089, at *2.

Plaintiff also waives any claim regarding an autonomy privacy interest, because she does not address LinkedIn's point that she failed to allege one. *Jones*, 2022 WL 1137089, at *2.

Because Plaintiff has effectively offered ***no response*** to LinkedIn's argument that she has not alleged a protected privacy interest, she concedes a necessary element of her invasion of privacy claim, and this alone is dispositive. *See Allen v. Dollar Tree Stores, Inc.*, 475 F. App'x 159, 159 (9th Cir. 2012) (district court properly dismissed claims where plaintiff's "opposition to the motion to dismiss failed to respond to [the defendant's] argument"); *Henry v. Napa Valley Unified*, 2016 WL 7157670, at *4-5 (N.D. Cal. Dec. 8, 2016) (dismissing claim with prejudice where plaintiff failed to demonstrate the viability of claim in opposition).

### 2. Plaintiff Alleged No Reasonable Expectation of Privacy Here.

Plaintiff also makes no attempt to rebut LinkedIn's argument that, because consumers today generally understand that their online activities are not completely private, she could have had no reasonable expectation of privacy in her online browsing. (Mot. at 20-21; (*see* Opp. at 17-18). Instead, Plaintiff cites a distinguishable authority providing no support for her position. *In re Facebook, Inc. Internet Tracking Litigation* involved Facebook plug-ins on "countless websites" collecting "an enormous amount" of logged-out data, which Facebook allegedly then "compile[d]" to create "cradle-to-grave profile[s] without users' consent." 956 F.3d 589, 589-99, 603 (9th Cir. 2020). Facebook's practices are worlds away in degree and kind from the limited collection of information from a single website here. Further, the Ninth Circuit based its finding on the allegation that Facebook also "set an expectation that logged-out user data would ***not*** be collected," wholly failing to "disclose the ***extent*** of information collected." *Id.* at 602-03 (emphasis added). Here, however, LinkedIn's disclosures expressly cover "interactions" with third-party websites, and Plaintiff's allegations hardly implicate vast quantities of information. (Mot. at 22.) *In re Meta Pixel Healthcare Litigation* similarly involves far more information collected across ***at least 664 websites***. Complaint. 3:22-cv-3580, ECF No. 1, at ¶¶ 11, 89. Plaintiff's authorities provide her no

1    support and this Court should give them no weight.

2        **3.    Plaintiff's Lack of Allegations Supporting a "Highly Offensive"
          Invasion Independently Merits Dismissal.**

3

4        LinkedIn showed that Plaintiff never alleged a "highly offensive" intrusion. (Mot. at 22-

5    24.) Plaintiff's claim that this question cannot be resolved on the pleadings, (Opp. at 20), ignores

6    the opinions LinkedIn cites dismissing cases due to deficient allegations of highly offensive

7    conduct, (*see* Mot. at 22)—*even where* "private medical information" was at issue. *See*, *e.g.*, *Ojeda*

8    *v. Kaiser Permanente Int'l, Inc.*, 2022 WL 18228249, at *6 (C.D. Cal. Nov. 29, 2022). Plaintiff's

9    citations to *In re Google Location Hist. Litig.* and *Facebook Internet Tracking*, both involving

10   systematic tracking and misrepresentations, show only that dismissal at the pleading stage may be

11   inappropriate on very different facts. *See In re Google Location Hist. Litig.*, 514 F. Supp. 3d 1147,

12   1158 (N.D. Cal. 2021) (collection of comprehensive geolocation data notwithstanding opt-out

13   selections); *In re Facebook Internet Tracking Litigation*, 956 F.3d 589, 602-03 (9th Cir. 2020)

14   (comprehensive tracking of logged-out internet activity directly contradicting disclosures). And

15   *Mastel v. Miniclip SA*, cited by Plaintiff, ***dismissed*** Mastel's invasion of privacy claims ***because***

16   ***the complaint there failed to sufficiently allege highly offensive conduct***. 549 F. Supp. 3d 1129,

17   1142 (E.D. Cal. 2021). Plaintiff's failure to allege a risk of serious harm, receipt of especially

18   sensitive information, or any culpable motive mandates the same result here. (Mot. at 22-25.)

19       *In re Meta Pixel Healthcare Litigation* also does not aid Plaintiff. She cites this case for its

20   suggestion that alleged receipt information in contravention of stated policies may be adequate to

21   survive a motion to dismiss. (Opp. at 22.) However, first, as argued, LinkedIn's practices did not

22   contravene its representations. *Supra* II.C.2. Second, the cited opinion is an order ***denying*** the

23   plaintiffs' motion for a permanent injunction, and thus made no determination that the plaintiffs'

24   allegations sufficed to survive dismissal. *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 801.

25       Plaintiff's attempt to correct her FAC's failure to allege any culpable motive likewise fails.

26   First, she states that "questions of intent are generally questions of fact." (Opp. at 23.) But her sole

27   citation for this assertion does not even involve invasion of privacy claims, as *Oddo* is an order

28   denying the defendant's motion for summary judgment on fraud claims, in which the court

concluded that discovery had not yet foreclosed the possibility that the defendant had an intent to deceive. *Oddo v. United Technologies Corp.*, 2022 WL 577663, at *16 (C.D. Cal. Jan. 3, 2022). This has no bearing on the propriety of dismissal at the pleading stage on the basis that a plaintiff has failed to support allegations of a highly offensive intrusion with sufficient allegations of intent.

Plaintiff's other citations to *In re Vizio* and *In re Nickelodeon* are also inapposite because they (1) rest on a defendant's disregard for its customers' privacy choices and (2) do not even discuss intent. (Opp. at 24.) In *In re Vizio*, the defendant collected customers' information through its "Smart Interactivity" software ***even if customers turned the feature off***. *In re Vizio, Inc. Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1233 (C.D. Cal. 2017). There is no such allegation here. Moreover, *In re Vizio* never discusses allegations of intent.

Similarly, *In re Nickelodeon* irrelevantly suggests that allegations of "***duplicitous tactics***" encouraging use of a service "***under false pretenses***" may suggest highly offensive practices, and does not address intent at all. 827 F.3d 262, 295 (3d Cir. 2016). That case finds sufficient allegations of highly offensive conduct where Nickelodeon's website displayed the message, "HEY GROWN-UPS: We don't collect ANY personal information about your kids[,]" yet, in fact, the website did exactly this through Google cookies. *Id.* at 269, 295. Notably, as to defendant Google, the Third Circuit explained that "courts have long understood that tracking cookies can serve legitimate commercial purposes," and notwithstanding that children were allegedly tracked, Google's use of third-party cookies "on Nick.com in the same way that it deploy[ed] cookies on myriad others websites" was "***not . . . sufficiently offensive . . . to survive a motion to dismiss***." *Id.* at 294-95.

Here, too, as argued, because LinkedIn's alleged conduct falls squarely within the bounds of routine commercial behavior, (Mot. at 24-25), it is not highly offensive as a matter of law.

### III.    CONCLUSION

Plaintiff's Opposition wholly fails to rebut LinkedIn's arguments as to why she has failed to state claims under CIPA or for invasion of privacy under the California Constitution. The Opposition instead merely underscores the perils of her counsel's cookie-cutter approach to litigating their copycat cases against LinkedIn. For all of the reasons set forth above, Plaintiff's FAC is fatally generic and legally flawed, and the Court should dismiss it with prejudice.

1    Dated: May 6, 2025                          COOLEY LLP

2
                                                By: *s/ Jeffrey M. Gutkin*
3                                                      Jeffrey M. Gutkin

4                                               Attorney for Defendant
                                                LINKEDIN CORPORATION
5

6    318019254

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28